William K. **ZIMMERMAN,** Marlene
K. Zimmerman, and Ronda
Trueblood, Plaintiffs,

v.

**TIPPECANOE SHERIFF'S DEPART- MENT,** Ray A. Gross, Steve Grant, Roy Sasser, Julia Kuckartz, Angie Davis, Denise Saxton, Gerald V. Andrews, Gary Dowell, William R. Balser, Jr., James S. Quesenberry, Dr. Hebard, and David R. Murtaugh, Defendants.

No. 4:97–CV–0062 AS.

United States District Court,
N.D. Indiana,
Hammond Division.

Sept. 22, 1998.

William K. Zimmerman, Carlisle, IN, pro se.

Marlene K. Zimmerman, West Lafayette, IN, pro se.

Ronda S. Trueblood, Lafayette, IN, pro se.

George L. Hanna, Mary A. Russell, Hanna and Gerde, Lafayette, IN, for Defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

William Zimmerman, Marlene Zimmerman, and Ronda Trueblood, filed this *pro se* action pursuant to 42 U.S.C. § 1983, against Tippecanoe County Sheriff David Murtaugh and Tippecanoe County Jail officials or em-ployees Lieutenant Ray Gross, Captain Steve Grant, Custody Officers Roy Sasser, Julia Kuckartz, Angelina Alford,[1] Denise Saxton, Gerald Andrews, Gary Dowell, William Balser, and James Quesenberry, and Dr. Hebard. The plaintiffs alleged that the defendants' actions violated their federally protected rights and provisions of Indiana's constitution and "Indiana Jail Standards."

After screening the complaint pursuant to 28 U.S.C. § 1915A, the court dismissed the Tippecanoe County Sheriff's Department and the claims arising under Indiana's constitution and jail standards. On December 16, 1997, the court dismissed plaintiffs Marlene Zimmerman and Rhonda Trueblood from this action, dismissed grounds ten, eleven, thirteen, and fifteen, and allowed Mr. Zimmerman to amend his complaint by interlineation to clarify the complaint in certain regards. On February 5, 1998, the court dismissed defendant Andrews. This case is now before the court on a motion for summary judgment filed by the defendants pursuant to Fed. R.Civ.P. 56.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Although the moving party must initially identify the basis for its contention that no genuine issue of material fact exists, the nonmoving party cannot rest on his pleadings, but must produce his own evidence. *Hughes v. Joliet Correctional Ctr.,* 931 F.2d 425, 428 (7th Cir.1991). Rule 56(e) requires that the nonmoving party who bears the burden of proof on an issue for trial allege specific facts showing that there is a genuine issue for trial by his own affidavits or by the depositions, answers to interrogatories,

---

1. The plaintiff originally identified this defendant as Angelina Alford, but was granted leave to amend his complaint to substitute the name Angie Davis for that of Angelina Alford. The defendants' summary judgment motion refers to this defendant as Angelina Alford and the defendants have submitted an affidavit signed by Angelina Alford. In this memorandum, the court will also refer to this defendant as Angelina Alford.

and admissions on file. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548.

... In considering whether any genuine issues of material fact exist, we view the record and extract all reasonable inferences from the evidence in the light most favorable to the nonmoving party. However, the nonmoving party "must do more than simply show that there exists some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Only disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.

*McGinn v. Burlington Northern R.R. Co.*, 102 F.3d 295, 298 (7th Cir.1996).

Mr. Zimmerman is currently a state prisoner confined at the Indiana Department of Correction's Wabash Valley Correctional Facility. The facts relating to this case occurred while Mr. Zimmerman was confined at the Tippecanoe County Jail for a fairly lengthy period of time as a pre-trial detainee. Mr. Zimmerman alleges that the defendants' actions violated the United States Constitution's First, Fourth, Eighth, and Fourteenth Amendments.

The complaint contains seventeen separate grounds, four of which have been dismissed. Mr. Zimmerman asserts in several of the remaining claims, including two, four, five, six, eight, and nine, that the defendants treated him differently than other inmates, in violation of the Fourteenth Amendment's equal protection clause. The court discussed the lack of application of the equal protection clause to Mr. Zimmerman's claims in its order of December 16, 1997, in which it dismissed grounds ten, eleven, thirteen, and fifteen. The court will grant the defendants summary judgment on the equal protection claims found in grounds two, four, five, six, eight, and nine, for the reasons discussed in its order of December 16, 1997.

■ In grounds, three, five, six, seven, twelve, and fourteen, Mr. Zimmerman alleg-

es that the defendants' actions violated his rights under the Fourteenth Amendment's due process clause.[2] In several of these grounds, Mr. Zimmerman alleges that he was punished without due process. In *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court held that most prison disciplinary sanctions not involving the loss of good time do not implicate the Fourteenth Amendment because they do not impose an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. But *Sandin* does not apply to pre-trial detainees, who may not be punished without due process of law, and pre-trial detainees are entitled to procedural due process in connection with punishment imposed for a disciplinary infraction. *Whitford v. Boglino*, 63 F.3d 527, 531 n. 4 (7th Cir.1995). The procedural protections provided to state prisoners in connection with prison disciplinary proceedings by *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) are essentially notice of the allegations, an opportunity to be heard and to present witnesses, and adjudication by a fact finder who puts his findings on the record. *McKinney v. Meese*, 831 F.2d 728, 733 (7th Cir.1987). Once a prisoner has been granted those procedural protections, the role of a reviewing court "is limited to determining whether there was sufficient evidence to support the (disciplinary) committee's decision." *Id.* Such a decision is constitutionally valid if there is "any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent, Mass. Correctional Institution v. Hill*, 472 U.S. 445, 455, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985).

■ In ground five, Mr. Zimmerman alleges that defendants Murtaugh, Balser, Andrews, and Jackson placed him in disciplinary segregation for thirty days "for possession of contraband when no evidence of contraband [was] seen or found in any location that was accessible by plaintiff," after two searches of his cell and body. The materials submitted by the parties establish that Mr. Zimmerman was written up for

---

**2.** Mr. Zimmerman also asserts Fourteenth Amendment claims in grounds two, four, eight, and nine, but the court construes those claims as arising only under the equal protection clause.

smoking in his cell and afforded a hearing. According to the defendants' submissions, Officer Balser smelled smoke in the area of Mr. Zimmerman's cell, noted that he had tied a bath towel over his smoke alarm, and asked him if he had smoked in his cell. According to Officer Balser's account, Mr. Zimmerman admitted having smoked in his cell, and the disciplinary board relied on this admission in finding him guilty. The documentation establishes that Mr. Zimmerman was afforded the appropriate procedural protections, and there was sufficient evidence to support a finding of guilt in this instance under *Superintendent, Mass. Correctional Institution v. Hill.* See *Redding v. Fairman,* 717 F.2d 1105, 1116 (7th Cir. 1983), *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1282, 79 L.Ed.2d 685 (1984) (where a disciplinary committee writes "resident admits he committed the act charged," it has provided a Constitutionally sufficient statement of facts relied on).[3]

■ In ground six Mr. Zimmerman alleges that defendants Murtaugh and Grant ordered him to be "held in [the] disciplinary segregation unit of the Tippecanoe County Jail" for five months without "a disciplinary hearing or any allegation of conduct violation." Sheriff Murtaugh's affidavit establishes that his decision to place Mr. Zimmerman in the segregation unit was an administrative, rather than a disciplinary, decision. According to the defendants' submissions, the jail's segregation unit is more secure than the general population cell block. Sheriff Murtaugh states that because of Mr. Zimmerman's escape attempt while on a trip to the hospital, and the fact that the handcuff key used by him in his escape attempt was never located, Sheriff Murtaugh directed that he should be placed in the more secure portion of the jail and that he be placed in leg irons when he was out of his cell. Sheriff Murtaugh states that he took these steps for "jail se-

curity, and these orders were not made in an effort to punish William K. Zimmerman."

■ Not every placement of a pre-trial detainee in administrative segregation constitutes punishment, and the segregation of a pre-trial detainee for legitimate security reasons without a hearing does not violate due process. *Zarnes v. Rhodes,* 64 F.3d 285, 291 & n. 5 (7th Cir.1995). The court concludes that the defendants' placement of Mr. Zimmerman, an inmate with a propensity for escape attempts, in more secure housing without a hearing, and requiring that he wear leg irons when out of his cell, did not constitute punishment and did not violate his Fourteenth Amendment rights.

■ In ground seven, Mr. Zimmerman alleges that defendants Murtaugh, Grant, and Dowell violated his federally protected rights when defendant Grant ordered his cell stripped out without a conduct report. The defendants argue that his cell was stripped out for a brief period of time immediately after his return to the jail after he attempted to escape during a trip to the hospital. In his responses to the defendants' submissions, Mr. Zimmerman asserts that his property was not returned to him for fourteen days. The Fourteenth Amendment requires no process when jail officials search a cell or remove property to ensure jail security, and that the property removed may not have been returned immediately does not violate Mr. Zimmerman's Fourteenth Amendment rights.

■ In ground twelve, Mr. Zimmerman alleges that defendants Murtaugh and Kuckartz restricted his right to commissary without the benefit of a disciplinary hearing. He also alleges that the denial of commissary on this occasion violated his First Amendment rights because he was unable to purchase stamps and materials with which to correspond with his family and his attorney.

---

3. Mr. Zimmerman contends in his affidavit that he did not make the statements attributed to him by Officer Balser. But under *Superintendent, Mass. Correctional Institution v. Hill,* the federal courts court do not reevaluate the evidence where the record establishes that a prisoner has been afforded the due process protections man-

dated by *Wolff v. McDonnell.* It is not the function of this court to rehear or reweigh the evidence; "(i)nstead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *McKinney v. Meese,* 831 F.2d at 733.

Mr. Zimmerman alleges that he went on a hunger strike on January 1, 1996, to protest his treatment at the hands of jail officials. He further alleges that he voluntarily ended his hunger strike on January 4 at noon, ate lunch, and then "filled out [his] commissary order which was supposed to be delivered the next day." When his commissary order did not arrive on January 5, he complained to Officer Kuckartz, who was responsible for commissary, and filed a grievance. According to the complaint, his "subsequent January 8, 1996 commissary order was not interfered with." Mr. Zimmerman alleges that Officer Kuckartz intentionally refused to fill his order, told him that he did not need commissary because he was on a fast, and that "if I don't want you to have commissary, you won't get it." When Mr. Zimmerman said that he had also ordered stamps, stationary, and envelopes, "she changed her story to 'I didn't get your order.'"

Officer Kuckartz denies in her affidavit that Mr. Zimmerman's commissary privileges were ever suspended; she states instead that "(w)hen he did not get his order placed in a timely fashion, it would not be filled." Mr. Zimmerman's affidavit vigorously contests Officer Kuckartz's version of events, and states that she intentionally refused to process his January 5, 1996 commissary order in "retaliation" for going on a hunger strike. Because these affidavits are in conflict, the court accepts the question of why Mr. Zimmerman did not get his January 5, 1996 commissary order as a disputed question of fact.

But that the reason why this particular commissary order was not filled is in dispute does not preclude summary judgment. Mr. Zimmerman has submitted his commissary records from September 22, 1995 through February 27, 1996, which establish that he usually received two commissary orders a week and never received less than one a week, except for the week in question. Mr. Zimmerman received an extensive commissary order on December 29, 1995, including snack food (which the court assumes he consumed before beginning his hunger strike on January 1, 1996), a pen, stamps, and envelopes. On January 8, 1996, he received a medical commissary purchase, and on January 9, 1996, he received another extensive commissary order, including a pen, stamps, and envelopes. Whatever the reason he did not receive commissary on January 5, it is clear that there was no pattern of commissary denial. Moreover, Mr. Zimmerman does not assert that he was actually unable to correspond with his family or attorney, or that he suffered any actual harm as a result of the missed commissary order. The fact that Mr. Zimmerman received stamps and writing supplies on December 29, 1995, makes it unlikely that he suffered any harm from being unable to correspond with others during the brief period of time before he received his next commissary order on January 9, 1996.

■ In ground fourteen, Mr. Zimmerman asserts that defendants Murtaugh and Gross violated his Fourth and Fourteenth Amendment rights by violating the attorney-client confidentiality of his conversations with his attorney. He specifically asserts that Lieutenant Gross required that Mr. Zimmerman and "his counsel hold conversations in a locked jail room which was equipped with a 2–way intercom speaker, and plaintiff along with his counsel observed Lieutenant Roy A. Gross enter [the] control room where [the] intercom system is controlled. Defendant Gross remained in said control room for the duration of the plaintiff's attorney/client conference."

Lieutenant Gross concedes in his affidavit that he might have been in the jail's control room during a visit between Mr. Zimmerman and his counsel. He states, however, that he "made no attempt to activate the 2–way intercom speaker. Had the intercom speaker been activated, a loud 'buzz' would have occurred in the conference room, and said 'buzz' would have re-occurred almost every minute had said intercom been activated." Lieutenant Gross denies that any "eavesdropping" occurred. He states that to have listened in on the conference, he "would have had to have had a telephone at my ear in order for the alleged 'eavesdropping' to have taken place, and the Plaintiff would have been able to see me with the telephone to my

ear."[4] Mr. Zimmerman responds that the mere fact that Lieutenant Gross was in the control room at all "overlook(ed) the precedents requiring attorney-client consultations to be held in a soundproof room and in [a] confidential manner; Defendant Gross, a trained investigator ... should not have placed himself in a position of controversy as he did."

The Fourteenth Amendment "guarantees meaningful access to courts" *Dreher v. Sielaff,* 636 F.2d 1141, 1143 (7th Cir.1980), *citing Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). "[T]he opportunity to communicate privately with an attorney is an important part of that meaningful access." *Id.* at 1143, *citing Bach v. Illinois,* 504 F.2d 1100, 1102 (7th Cir.), *cert. denied,* 418 U.S. 910, 94 S.Ct. 3202, 41 L.Ed.2d 1156 (1974). Accordingly, the court construes this allegation as a Fourteenth Amendment claim dealing with meaningful access to the courts.

The right to consult with an attorney survives incarceration, even incarceration following conviction, and an inmate's opportunity to confer with counsel is an important constitutional right which the courts will not permit to be abridged unnecessarily. *Dreher v. Sielaff,* 636 F.2d at 1146. Contact by a prisoner with an attorney, and the opportunity to communicate privately, is a vital ingredient to the effective assistance of counsel and access to the courts. *Id.* at 1143. Nevertheless, Lieutenant Gross has sworn that he did not listen in on the conversation between Mr. Zimmerman and his attorney and stated without contradiction that any attempt on his part to listen to their conversation would have been apparent to Mr. Zimmerman and his attorney at the time. The court concludes that Lieutenant Gross could only have listened to this conversation in a manner that would have been obvious to Mr. Zimmerman and his attorney, and that he did not actually listen to the conversation. The court declines to adopt Mr. Zimmerman's suggestion that the mere "appearance of impropriety" on Lieutenant Gross's part is sufficient to violate his federally protected rights.

Grounds three and seventeen of the complaint deal with the alleged mishandling of Mr. Zimmerman's mail. In ground three, he asserts that defendants Murtaugh and Grant violated his Fourteenth Amendment rights by removing non-contraband materials from his "incoming mail without adhering to directive of 'Indiana Jail Standards' requiring the plaintiff to notify plaintiff of said removal." Defendant Grant states in his affidavit that "I took no action with regard to the removal of materials from Plaintiff's incoming mail." In his own affidavit, Mr. Zimmerman asserts defendant Grant "did remove items from my inmate mail without notifying me of that removal." The exact nature of the items allegedly removed has not been explained to the court.

In ground seventeen of his complaint, Mr. Zimmerman alleges that defendants Murtaugh and Alford violated Mr. Zimmerman's First and Fourth Amendment rights when "defendant Alford twice took possession of plaintiff's outgoing mail from in front of his disciplinary segregation cell and did not properly process said mail." Mr. Zimmerman alleges in his complaint that defendant Alford hid his mail "behind items on a window ledge in the segregation area foyer. Said mail was discovered several hours later by [a] day shift correction officer." Defendant Alford states in her affidavit that she never took "possession of William K. Zimmerman's out-going mail from in front of his disciplinary segregation cell." Mr. Zimmerman's affidavit contradicts this by reasserting that she did take his mail, and that she hid it rather than properly processing it.

4. Mr. Zimmerman attaches an affidavit from his attorney to his complaint in which his attorney states that he "observed Detective Lieutenant Roy Gross ... enter the control room where said 2-way intercom system of ¶ 4 *Supra* was *capable of being* monitored and controlled." The words in italics were pen and ink changes made by Mr. Zimmerman's counsel to the typed affidavit. The court construes the words entered by interlineation in this affidavit as indicating that Mr. Zimmerman's attorney believed that his conversation was capable of being overheard by defendant Gross under the right circumstances, but that defendant Gross did not actually attempt to overhear the conversation.

■ The parties' affidavits create a disputed issue of fact as to whether defendant Grant took property from Mr. Zimmerman's incoming mail on one occasion, and whether defendant Alford may have handled his outgoing mail on two occasions. Sheriff Murtaugh is named as a defendant in these two claims, but nowhere does Mr. Zimmerman allege his personal involvement in or responsibly for these incidents. In other portions of his complaint, Mr. Zimmerman has also named Sheriff Murtaugh in claims where it does not appear that he had any personal involvement.

■ Section 1983 creates a cause of action for damages based on personal liability; a plaintiff must show the defendant's personal involvement or participation, or direct responsibility for the conditions of which he complains. *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir.1986); *Wolf–Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir.1983). The doctrine of *respondeat superior*, under which a supervisor may be held liable for an employee's actions, has no application to § 1983 actions. *Adams v. Pate*, 445 F.2d 105, 107 (7th Cir.1971); *Cameron v. Metcuz*, 705 F.Supp. 454, 457 (N.D.Ind.1989). Mr. Zimmerman appears to have named Sheriff Murtaugh as a defendant in these claims in the belief that as the jail's chief administrative officer, he should be held responsible for the actions of his subordinates. Accordingly, Sheriff Murtaugh is entitled to dismissal in regard to these claims for lack of personal involvement.

■ In regard to Mr. Zimmerman's outgoing mail claims, his own submissions establish that even if defendant Alford hid Mr. Zimmerman's mail, another officer found the mail and ensured that it was mailed. Accordingly, the court concludes that Mr. Zimmerman suffered no harm from these incidents and that these allegations state no Constitutional claim against defendant Alford.

■ In regard to Mr. Zimmerman's incoming mail, correspondence by letter to an inmate is communication covered by the First and Fourteenth Amendments, and a "decision to censor or withhold delivery of a particular letter must be accompanied by minimum procedural safeguards." *Procunier v. Martinez*, 416 U.S. 396, 418, 94 S.Ct. 1800, 1814, 40 L.Ed.2d 224 (1974). But Mr. Zimmerman does not allege that Captain Grant withheld his letter; he alleges rather that defendant Grant removed unspecified non-textual non-contraband property from the envelope. He states in his complaint that the defendants "did not acknowledge removal of [the] property until plaintiff submitted [a] grievance." Mr. Zimmerman does not state whether or not this property was given to him as a result of the grievance process.

Because Mr. Zimmerman does not allege that Captain Grant withheld written communication from him, the First Amendment has no application to this claim. The Fourteenth Amendment provides that state and municipal officials shall not "deprive any person of life, liberty, or property, without due process of law." In *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the Supreme Court held that Nebraska's tort claims act, which provided a method by which a person could seek reimbursement for the negligent loss of property, met the requirements of the due process clause. In *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Court extended the holding of *Parratt* to include intentional deprivations of property by state or local employees where the state provides a meaningful post-deprivation remedy for the loss.

■ The Indiana tort claims act, Indiana Code § 34–4–16.5–1 *et seq.*, provides for state judicial review of property losses caused by state or municipal employees. This statute provides an adequate post-deprivation remedy to redress municipal officials' accidental or intentional deprivation of a person's property. *Wilson v. Civil Town of Clayton*, 839 F.2d 375, 383 (7th Cir.1988). Because Indiana provides an adequate remedy for the illegal deprivation of property by municipal officials, Captain Grant's allegedly improper withholding of Mr. Zimmerman's property provides no right to recovery under § 1983, even assuming that he did not receive his

property after he grieved the property having been withheld from him.

 Mr. Zimmerman asserts in grounds two, four, five, six, seven, nine, and sixteen that the defendants violated his Eighth Amendment rights while he was a pre-trial detainee confined at the Tippecanoe County Jail. The Eighth Amendment's prescription against cruel and unusual punishments applies only to persons convicted of crimes. *Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872, 60 L.Ed.2d 447 (1979); *Robinson v. Moses,* 644 F.Supp. 975 (N.D.Ind.1986). The rights of pre-trial detainees are derived from the Fourteenth Amendment's Due Process Clause. *Robinson v. Moses,* 644 F.Supp. at 980, but the standard under the Due Process Clause for pre-trial detainees "is the same standard that applies to prisoners bringing claims under the eighth amendment." *Robinson v. Moses,* 644 F.Supp. at 981, *citing Hamm v. DeKalb Co.,* 774 F.2d 1567, 1573 (11th Cir.1985), *cert. denied,* 475 U.S. 1096, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986).

 The Eighth Amendment prohibits punishment that is "cruel and unusual." *Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Punishment in this context involves both a subjective and objective component. The court must determine whether the alleged deprivation was sufficiently serious to rise to the level of a constitutional violation (the objective component), and whether the defendants acted with the requisite state of mind (the subjective component), *Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 1977–1979, 128 L.Ed.2d 811 (1994). The objective component requires an "extreme deprivation" that denies the "minimal civilized measure of life's necessities," and forces the plaintiff to endure a situation that is beyond contemporary standards of human decency. *Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992). The Constitution "does not mandate comfortable prisons" or jails, and only those deprivations denying " 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter,* 501 U.S. at 298, 111 S.Ct. at

2324, 115 L.Ed.2d 271, *quoting Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981).

"Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson,* 832 F.2d 950, 954 (6th Cir. 1987). The allegations contained in grounds two, four, five, six, seven do not deprive a prisoner of the minimal civilized measure of life's necessities under the standards established by *Farmer v. Brennan* and *Wilson v. Seiter,* particularly where, as here, the conditions appear to have been imposed for a brief period of time and resulted in no harm to Mr. Zimmerman.

 In ground nine, Mr. Zimmerman alleges that after a cursory examination, defendant Hebard "refused to refer plaintiff to [a] county paid dentist for emergency treatment of abscess and bone fragmentation." In medical care cases, the test described in *Farmer v. Brennan Wilson v. Seiter* is expressed in terms of whether there was deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Mr. Zimmerman states that he suffered injury to his teeth before he was confined in the Tippecanoe County Jail. Dr. Hebard has submitted an affidavit in which he states that he is the jail physician for the Tippecanoe County Jail. On December 6, 1995, Dr. Hebard examined Mr. Zimmerman for a problem with his teeth. Dr. Hebard states that Mr. Zimmerman "advised me that he was not in any pain or discomfort," and Dr. Hebard concluded that "no emergency existed and there was no need to send Plaintiff Zimmerman to a dentist." Dr. Hebard further notes that Mr. Zimmerman was examined several months later by Indiana Department of Correction medical staff members and again reported no pain or discomfort.

 A medical need is serious, within the meaning of *Estelle v. Gamble,* if it involves a condition of urgency or may produce death, degeneration, or extreme pain. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied,* 513 U.S. 1154, 115 S.Ct.

1108, 130, L.Ed.2d 1074 (1995). A serious medical need generally is one that a physician has diagnosed as mandating treatment or one which is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Gaudreault v. Municipality of Salem, Massachusetts*, 923 F.2d 203, 208 (1st Cir.1990), *cert. denied*, 500 U.S. 956, 111 S.Ct. 2266, 114 L.Ed.2d 718 (1991); *Martin v. DeBruyn*, 880 F.Supp. 610, 614 (N.D.Ind.1995). If Mr. Zimmerman did not suffer pain or even discomfort from this medical condition, the court concludes that it was not a serious medical need within the meaning of *Estelle v. Gamble*, at the time Dr. Hebard examined him. Accordingly, Dr. Hebard's failure to refer him to a dentist for emergency treatment did not impose punishment on him.

 In ground 16 of his complaint, Mr. Zimmerman alleges that Officer Quesenberry caused "radial nerve damage, possibly permanent, to plaintiff's right wrist and hand by improperly handcuffing [him] too tightly on October 7, 1995." Mr. Zimmerman also names Sheriff Murtaugh as a defendant in this claim, but the parties' submissions do not support an inference that Sheriff Murtaugh had any personal involvement in this incident, which did not occur at the jail. *Rascon v. Hardiman*, 803 F.2d at 273; *Wolf-Lillie v. Sonquist*, 699 F.2d at 869.

In his affidavit in support of the defendants' summary judgment motion, defendant Quesenberry states that on October 7, 1995, he was employed as a custody officer at the Tippecanoe County Jail. On that date, he escorted Mr. Zimmerman to the Elizabeth Hospital Medical Center to be treated for a cut on the back of his left wrist. "When handcuffed at the jail for the trip to St. Elizabeth Hospital Medical Center, there was room for two (2) of my fingers inside Zimmerman's handcuffs. This assured that they were not too tight." While waiting for treatment, Mr. Zimmerman asked to use the restroom twice. The second time, he was not handcuffed, but was wearing leg shackles. "Within a few minutes, Zimmerman ran from the restroom without leg restraints and headed out of the emergency room." Mr. Zimmerman had a stun gun and pepper spray, and used the stun gun on Officer Quesenberry. Defendant Quesenberry states that he tackled Mr. Zimmerman and helped return him to the emergency room where a Lafayette Police Officer handcuffed Mr. Zimmerman to the bed.

Mr. Zimmerman submits a response to the defendants' summary judgment motion in which he makes statements verifying "pursuant to 28 U.S.C. § 1746, that the statements and representations ... are true and accurate to the best of my knowledge and belief." Mr. Zimmerman contradicts Officer Quesenberry's version of events in several respects. He asserts that he was not handcuffed at the jail, but that Officer Quesenberry was the person who handcuffed him to the gurney after his recapture.

 Mr. Zimmerman asserts that he suffered injury when he was handcuffed to the gurney, and the parties' submissions establish that the question of who handcuffed Mr. Zimmerman after his escape attempt is in dispute. Use of physical force by custody officers against an inmate may state a claim under § 1983, but not every malevolent touch by an officer gives rise to a federal cause of action. *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Hudson v. McMillian*, 503 U.S. at 9, 112 S.Ct. at 1000, quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). The Eighth Amendment excludes *de minimis* use of force from constitutional recognition, so long as it is not of a type which is "repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. at 9–10, 112 S.Ct. at 1000, citing *Whitley v. Albers*, 475 U.S. 312, 328, 106 S.Ct. 1078, 1088, 89 L.Ed.2d 251 (1986). The improper use of force, however, may violate the Eighth Amendment even though the inmate does not suffer serious injury. *Hudson v. McMillian*, 503 U.S. at 4, 112 S.Ct. at 997; *see also Williams v. Boles*, 841 F.2d 181, 183 (7th Cir.1988).

■ The standard used to analyze claims of excessive use of force is whether the alleged conduct was done in a "good faith effort to maintain or restore discipline or maliciously and sadistically for the purpose of causing harm." *Thomas v. Stalter,* 20 F.3d 298, 301 (7th Cir.1994), *quoting Hudson v. McMillian,* 503 U.S. at 7, 112 S.Ct. 995. In evaluating whether prison officials violated this standard, the court may consider the need for the application of force, the relationship between the need and the amount of force used, and the extent of injury inflicted. *Hudson v. McMillian,* 503 U.S. at 7, 112 S.Ct. at 999; *Lunsford v. Bennett,* 17 F.3d 1574, 1581 (7th Cir.1994). From these circumstances, the court may draw inferences as to whether the use of force plausibly could have been thought necessary, or evinced a wanton desire to inflict pain. *Lunsford v. Bennett,* 17 F.3d at 1582.

The use of force in this instance was handcuffing Mr. Zimmerman immediately after an escape attempt during which he used a nonlethal weapon on an officer. Applying the tests set forth in *Hudson v. McMillian,* the court concludes that handcuffing an inmate who has already been subdued and has ceased to resist does not violate the Eighth Amendment in these circumstances, so long as it is done in such a manner that does not inflict serious injury or permanent harm on the inmate.

Mr. Zimmerman alleges that the handcuffs were placed on his wrist so tightly that he suffered permanent radial nerve damage to his wrist. A finder of fact could conclude that placing handcuffs on an inmate, even in the trying circumstances presented here, could violate the Eighth Amendment if done with sufficient force to cause permanent nerve injury. The parties' summary judgment submissions do not address whether Mr. Zimmerman has in fact suffered permanent injury to his wrist so, on the record before it, the court will deny summary judgment to defendant Quesenberry.

■ In ground one, Mr. Zimmerman alleges that defendants Murtaugh and Grant violated his First Amendment rights when they refused to process mail to a newspaper reporter and attorney "though [the] correspondence was properly supplied with correct address and postage and conformed with all requirements of the U.S. postal service regulations." According to the complaint, this incident occurred shortly after "the sheriff posted a memo throughout the jail stating that no mail would be sent out that had artwork on the envelope."

In his affidavit, Sheriff Murtaugh states that he issued an order "that nothing was to be placed on an outgoing envelope except the address to whom the mail was being sent and the sender's address." Mr. Zimmerman violated this rule [5] and the letters in question were returned to him so he could place them in new envelopes with the correct information which "would then be mailed with the next outdoing mail. At most, an inmate's mail would be delayed under this order [by] one (1) day."

Correspondence by letter to or from inmates is communication covered by the First and Fourteenth Amendments. *Procunier v. Martinez,* 416 U.S. at 418, 94 S.Ct. at 1814. But the policy in question did not prevent Mr. Zimmerman from sending mail to anyone or freely expressing himself in his letters. This policy only regulated what could be on written on the envelope, and the court can discern no Constitutionally protected right of expression allowing prisoners to put artwork on outgoing envelopes. The defendants did not censor or otherwise attempt to control the contents of these two letters, and they did not prevent Mr. Zimmerman from mailing the letters because they allowed him to remail the two letters in unembellished envelopes.

For the foregoing reasons, the court **GRANTS** the defendants' summary judgment motion [docket entry # 55] in part and **DENIES** it in part. The court **GRANTS** summary judgment to all defendants except defendant James S. Quesenberry, and **DENIES** summary judgment to defendant Quesenberry in his individual capacity on the claim that on October 7, 1995, he used exces-

---

5. Mr. Zimmerman attached one of the envelopes in question to his complaint. The "artwork" on this particular envelope was more in the form of poetry.

sive force on the plaintiff by placing hand-cuffs on his right wrist so tightly that it resulted in permanent radial nerve damage.

IT IS SO ORDERED.