Robert H. DREHER, Director, Prison Legal Aid Project, Southern Illinois University, et al., Plaintiffs–Appellees,

v.

Allyn R. SIELAFF, individually and in official capacity as Director of the Illinois Department of Corrections, et al., Defendants–Appellants.

No. 80–1168.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 23, 1980.

Decided Dec. 9, 1980.

As Amended Dec. 11, 1980.

David Cassorla, Asst. Atty. Gen., Chicago, Ill., for defendants–appellants.

Richard J. Habinger, Prison Legal Aid, Carbondale, Ill., for plaintiffs–appellees.

Before CUMMINGS and WOOD, Circuit Judges, and CAMPBELL, Senior District Judge.**

HARLINGTON WOOD, Jr., Circuit Judge.

This is an appeal from the judgment of the district court granting plaintiffs–appellees' motion for summary judgment and denying defendants–appellants' cross motion for summary judgment in an attorney access case involving inmates in a state institution. The district court entered a permanent injunction governing attorney–inmate access.

The Prison Legal Aid Project (PLA)[1] filed a complaint on behalf of themselves and their clients, prisoners at Menard, alleging a denial of civil rights under color of state law in violation of 42 U.S.C. § 1983 by officials of the Illinois Department of Corrections at the Menard Correctional Center (Menard). The complaint alleged that officials at Menard, in their individual and official capacities, had denied meaningful access by PLA attorneys and staff to their clients: (1) by the imposition of a forty–eight hour notice requirement prior to visits; (2) by unduly delaying access once the attorneys had arrived at the prison; and (3) by failing to provide a sufficient number of private rooms where attorney–client interviews could be conducted. The complaint sought declaratory and injunctive relief requiring Menard to provide PLA with prompt access to its clients and to provide adequate interview facilities.

Attorneys and law students for PLA filed affidavits in support of their allegations. At no time since commencement of this suit, however, have appellants filed an answer.[2] On December 18, 1978, PLA filed a

---

** Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

1. The Prison Legal Aid Project is a law student clinical training program of the Southern Illinois University School of Law, Carbondale, Illinois, which has regularly provided needed legal services to Menard inmates. Our holding in this case is in no way intended to discourage this worthy program.

2. While a motion for summary judgment is proper at any time during the proceedings, Fed. R.Civ.P. 56, the court is ill–equipped to rule on such a motion where the pleadings are inadequate. Appellants' failure to respond may have been due to an anticipated settlement through the then–ongoing settlement negotiations. Further pleading might have made this appeal unnecessary.

motion for summary judgment, including a memorandum of law and supporting affidavits. PLA also filed a motion for class certification *nunc pro tunc* and a motion to strike several of appellants' exhibits. Menard filed a cross motion for summary judgment, including a memorandum of law and supporting affidavits, on April 30, 1979.[3] On January 9, 1980, the district court entered an order granting PLA's motion for summary judgment, motion for class certification *nunc pro tunc*, and motion to strike several of appellants' exhibits. The court also denied Menard's cross motion for summary judgment. Because the only issue before this court is the granting of PLA's motion for summary judgment, the disposition of the other matters by the trial court will not be examined.

██ The trial court, bearing in mind that the Fourteenth Amendment guarantees meaningful access to courts, *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), that the opportunity to communicate privately with an attorney is an important part of that meaningful access, *Bach v. Illinois*, 504 F.2d 1100, 1102 (7th Cir.), *cert. denied*, 418 U.S. 910, 94 S.Ct. 3202, 41 L.Ed.2d 1156 (1974), and that the institutional security needs of defendants require consideration, *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), made certain findings. The court found that those defense attorneys not associated with PLA were not required to give the forty–eight hour notice demanded of PLA, and that the resulting disparate treatment placed unreasonable restrictions upon PLA. In support of PLA's allegation

that Menard had engaged in a selective pattern of harassment by unduly delaying attorney meetings with prisoners, the court found that substantial delays and denials of access had occurred. The court also found that on occasion access to a private place to conduct interviews had been denied either by interference from guards or from the inadequacy of the rooms provided. Further, the court found that the facilities used during interviews were either under surveillance or otherwise not amenable to meaningful attorney–client communication. Based upon those findings the district court permanently enjoined Menard from denying the plaintiffs access when given twenty–four hour notice by PLA and also required that the defendants make appropriate exceptions for emergencies. The defendants were further enjoined to provide areas sufficiently private and appropriately equipped for meaningful client consultation.

Two issues are raised in this appeal. First, whether the district court acted properly in granting PLA's motion for summary judgment, and, second, whether the relief fashioned by the district court was proper under the circumstances. We conclude that those issues were not resolvable by summary judgment in the particular circumstances and reverse.

██ Considering the purpose and limitations of summary judgment and in particular that all doubts must be resolved against the movant, in this case the PLA, this court believes that there exists sufficient disputed issues of material fact making the grant of summary judgment inappropriate.[4]

---

**3.** The trial court found that the delay between plaintiffs–appellees' motion for summary judgment, filed on December 18, 1978, and defendants–appellants' cross motion for summary judgment, filed on April 30, 1979, did not prejudice either party.

**4.** It is well accepted that the purpose of summary judgment is to prevent an unnecessary trial where, on the basis of the pleadings and supporting documents, there remains no material issue of fact to be tried. *Kirk v. Home Indemnity Co.*, 431 F.2d 554, 559 (7th Cir. 1970). Summary judgment is appropriate only if it appears that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law. *Fitzsimmons v. Best*, 528 F.2d 692, 694 (7th Cir. 1976); Fed.R.Civ.P. 56(c). The burden is upon the moving party to show that there is no issue of material fact in dispute, *Rose v. Bridgeport Brass Co.*, 487 F.2d 804, 808 (7th Cir. 1973), and all doubts as to the existence of an issue of material fact must be resolved against the movant. *Moutoux v. Gulling Auto Electric, Inc.*, 295 F.2d 573, 577 (7th Cir. 1961). In passing on a motion for summary judgment, the trial court may only determine whether or not there exists a dispute as to a material issue of fact. It is not permitted to resolve that dispute. *Car-*

Therefore, we must remand this case for further proceedings.

■ In its complaint, PLA alleged a plan or scheme by officials at Menard to deny PLA access to its clients. PLA supported that allegation with affidavits attesting to various instances where appellees were delayed or denied access to their clients. While Menard's cross motion for summary judgment does not specifically deny the instances alleged in PLA's complaint, supporting affidavits do deny any concerted action to limit PLA access to its clients. It appears that some of the delays complained of were only about an hour long, which under some institutional circumstances may not always be unreasonable. The fault also appears not to be all one–sided. On occasion a number of PLA members all sought to meet their various inmate clients on the same date. That created a volume problem for the institution. At other times PLA sought to make subsequent short notice date changes and also changes in the list of inmates to be visited. Institutional delays resulting from these changes are not necessarily unreasonable. Whether those requested changes resulted from good cause or were merely to serve PLA convenience is not shown. Sometimes the inmates to be consulted were in the psychiatric unit. That no doubt raises other special problems. In any event the PLA has not always made things as easy for the institution as it might have. The institution is coping with an inmate population of about 2,600. PLA needs to be cognizant and considerate of the problems of Menard so long as no substantial detrimental effect on attorney–client access results. Some bit of cooperative understanding by all the parties is needed in these circumstances. Just what the underlying factual situation is appears in some doubt and cannot be resolved by summary judgment on this record.

Similarly, appellees allege that guards at Menard eavesdropped on attorney–client interviews and demanded to read legal papers passed between attorneys and prisoners. In his affidavit, appellant Warden Greer specifically denied that guards are instructed to eavesdrop on confidential conversations, while acknowledging that the guards' presence, for security purposes, may give such an impression. Also, for security reasons, Warden Greer stated that guards are instructed to examine, but not to read, anything passed between an attorney and prisoner. In any event, questions of material fact are raised as to these circumstances as well.

As to the inadequacy of facilities for attorney–client interviews, PLA alleges in its complaint that the number and furnishing of interview rooms is insufficient. Warden Greer's affidavit denied the facilities were inadequate. While the record is not entirely clear, it appears that additional facilities were constructed at Menard shortly after the PLA project was begun in 1975. It is impossible from the record to determine whether these new facilities, whatever they are, were constructed before or after commencement of this suit. At least a dispute of fact as to adequacy is created upon which the district court should have required the presentation of evidence. We cannot determine from the record what now exists in the way of consultation rooms or how they are furnished. The injunction requires that defendants "provide areas sufficiently private and appropriately equipped to allow meaningful interviews." Specifically what steps are to be taken to remedy the situation we cannot tell. It is no doubt difficult for the trial court to be more specific in the terms of the injunction, but this illustrates the difficulties of court intrusion into institution management. It leaves, however, the officials of Menard facing possible contempt charges even after good faith efforts to meet the vague terms of the injunction.[5]

ter v. Williams, 361 F.2d 189, 194 (7th Cir. 1966).

5. Chief Judge Foreman, who knows this institution well, may not need any further factual explanation on some of these issues, but we urge him to remember his colleagues on this court who need an ample record when review is required.

Upon remand, the trial court is directed to modify its permanent injunction by resolving it into a temporary injunction until it has had further opportunity to conduct a hearing on the issues of fact in dispute. We do not intend to imply that the findings Chief Judge Foreman has made by way of summary judgment may not turn out to be the correct findings after the presentation of evidence and additional consideration. We believe only that those findings based on the record before us are not attainable by summary judgment. In order to give that court some guidance in formulating a remedy, if it is ultimately determined that one is needed, we suggest it consider the following approach.

 We suggest that the district court direct the officials at Menard to prepare a plan providing for reasonable attorney access to prisoners by members of PLA, and also to present specific plans for the provision of adequate attorney–client interview facilities. PLA should, of course, be given the opportunity to comment on any Menard plan, to suggest revisions, modifications or additions, or to submit an alternate plan. The trial judge, in formulating a final remedy, will, as he has already done, take into consideration, among other things, the rights of prisoners to have access to counsel and the need for sufficient interview facilities, both as to quantity and privacy. Balanced against those considerations, the trial court should consider, among other things, the number of inmates at Menard, resulting prison manpower requirements, the volume of visits by PLA attorneys and staff, the reasonableness of some possible delays, the reasonableness of a notice requirement, and of course the overall security requirements of the institution. Any plan would be expected to provide some flexibility for special or emergency situations arising for either party.

Chief Judge Foreman is well aware that convicted prisoners still retain some of their constitutional rights during confinement in prison. *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). The Supreme Court has pointed out, however, that

simply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations.... The fact of confinement as well as the legitimate goals and policies of the penal institution limits these retained constitutional rights.

*Id.* at 546–47, 99 S.Ct. at 1877–78.

The trial judge is experienced in weighing the rights of the prisoners against the needs of the prison authorities. "In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974). It cannot be gainsaid that the administration of penal institutions is a difficult task.

[C]entral to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves. It is in the light of ... legitimate penal objectives that a court must assess challenges to prison regulations based on asserted constitutional rights of prisoners.

*Pell v. Procunier*, 417 U.S. 817, 823, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). As the Supreme Court has pointed out, "[t]he concept of incarceration itself entails a restriction on the freedom of inmates to associate with those outside of the penal institution." *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 126, 97 S.Ct. 2532, 2538, 53 L.Ed.2d 629 (1977).

 In striking an appropriate balance between conflicting claims,[6] the district court is well aware that

maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained consti-

6. From what has been revealed to us about prior settlement negotiations and the candid statements of counsel during oral argument, the claims in this particular case may not be as conflicting as they first appear. There appears to be some effort between reasonable parties to reach an accommodation considerate of the needs of each.

**1146**

tutional rights of both convicted prisoners and pretrial detainees.... Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry.... Prison administrators therefore should be accorded wide–ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

*Bell v. Wolfish*, 441 U.S. at 546–47, 99 S.Ct. at 1878. Where, as here, a state penal institution is involved, "federal courts have a further reason for deference to the appropriate prison authorities." *Procunier v. Martinez*, 416 U.S. 396, 405, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974).

 Menard, on the other hand, must realize in approaching these problems that an inmate's opportunity to confer with counsel is a particularly important constitutional right which the courts will not permit to be unnecessarily abridged.

Accordingly, the decision of the district court granting summary judgment to PLA is reversed and the cause is remanded for modification and further proceedings consistent with the views herein expressed. Menard should be required to complete its pleadings. Costs shall be assessed against defendants–appellants.

REVERSED AND REMANDED WITH INSTRUCTIONS.