In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2663

Michael Massey and Richard L. Steagall,

Plaintiffs-Appellants,

v.

Suzanne Wheeler, Unit Manager at the Federal
Correctional Center in Pekin, Illinois, in her
individual and official capacities,
David Helman, Warden at the
Federal Correctional Center in Pekin,
Illinois, in his individual and
official capacities, Janice Bonneville,
Paralegal Specialist at the Federal
Correctional Center in Pekin, Illinois,
in her individual and official capacities
and Michael Schallmoser, Case Manager at the Federal
Correctional Center in Pekin, Illinois, in his
individual and official capacities,

Defendants-Appellees.


Appeal from the United States District Court
for the Central District of Illinois, Springfield Division.
No. 98 C 1348--Jeanne E. Scott, Judge.


Argued February 23, 2000--Decided July 20, 2000


        Before Flaum, Kanne and Diane P. Wood, Circuit Judges.

        Kanne, Circuit Judge.  Inmate Michael Massey and his attorney, Richard L. Steagall, brought a two-count complaint against the staff of the Federal Correctional Center at Pekin, Illinois, where Massey is incarcerated, alleging violations of their constitutional rights. The plaintiffs allege that the prison's restrictions on inmates' unmonitored telephone calls violate their First and Fifth Amendment rights. The district court dismissed Count One without prejudice for failure to exhaust available administrative remedies. Count Two, which Steagall brought both as a third-party asserting Massey's rights and in his own name asserting his own constitutional rights, also was dismissed. The district court dismissed without prejudice the third-party claim for failure to exhaust administrative remedies and dismissed with prejudice Steagall's first-party action for failure to state a claim. We affirm

the district court's order and further hold that Steagall lacked standing to bring the third-party action in this case.

I.  History

While incarcerated, inmate Massey has carried on a continuous course of litigation, including actions against prison officials related to medical care he received some time ago, see Massey v. Helman, 196 F.3d 727 (7th Cir. 1999) ("Massey I"), and a civil forfeiture action in Indiana state court. To facilitate this litigation, Massey contends that he requires unmonitored telephone calls with his attorneys at least weekly because monitored telephone calls, personal visits and legal mail are insufficient. From March 1996 to September 1998, Massey made weekly unmonitored telephone calls to his attorneys in Illinois and Indiana. In October 1998, Massey had no pending court dates and was receiving sparse legal mail and no visits from attorneys. The prison staff decided that Massey did not need weekly or twice weekly unmonitored calls as he demanded, because other means of communication were adequate. Federal regulation 28 C.F.R. sec. 540.103 prohibits the prison from placing frequency limitations on unmonitored telephone calls to an inmate's attorney "when the inmate demonstrates that communication with attorneys by correspondence, visiting, or normal telephone use is not adequate." Between October 1998 and February 1999, Massey placed twenty-eight unmonitored calls, still more than one a week. The procedure for making unmonitored telephone calls placed an administrative burden on the prison staff because unmonitored telephone lines are available only in a certain area of the prison, and a staff member must be present at all times to ensure the inmate does not place calls to anyone other than his lawyer. Massey placed far more unmonitored telephone calls than any other prisoner, and according to prisoner records, almost half of the unmonitored calls placed from Massey's unit were from Massey. Massey further alleged that on three occasions, prison staff illegally opened his legal mail.

Massey saw a prison conspiracy behind the limitation on his weekly unmonitored calls, and he and Steagall complained that the other means of unmonitored communication were not adequate. When an inmate feels any of his rights have been infringed, Federal Bureau of Prisons (BOP) rules provide an administrative procedure to remedy the problem. Massey took a step toward initiating the administrative remedy by requesting BOP forms BP-9, BP-10 and BP-11. The prison staff denied this request because inmates must file BP-9 before requesting BP-10. Rather than simply providing

Massey with BP-9, defendant Suzanne Wheeler precipitated this litigation by engaging in a hyper-literal reading of Massey's request and refused to provide him any forms because he incorrectly requested three forms at once. Not to be outdone in the pursuit of absurdity, rather than respond with a request for form BP-9, Massey filed this lawsuit.

The prison officials moved to dismiss the suit on the grounds that the Prison Litigation Reform Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321-355 (codified as amended in scattered sections of 18 & 42 U.S.C.) ("PLRA") requires inmates to exhaust available administrative remedies before filing suit in district court. The defendants moved to dismiss Steagall's action for failure to state a claim and his third-party action on the same administrative exhaustion ground as Massey's own claim. The district court granted the motions without prejudice as to Count One and with prejudice as to Count Two.

## II.  Analysis

Massey believes the district court erred in holding that administrative exhaustion could be decided at the pleading stage under Rule 12(b)(1) and (6) motions. Fed. R. Civ. P. 12(b)(1), (6). Steagall appeals the Rule 12(b)(6) dismissal of his case for failure to state a constitutional injury. We review de novo the decisions regarding both dismissals. See Kaplan v. Shure Bros., Inc., 153 F.3d 413, 417 (7th Cir. 1998). In so doing, we accept all well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor. See Gossmeyer v. McDonald, 128 F.3d 481, 489 (7th Cir. 1997).

## A.  Massey's claims

As we recently stated in Perez v. Wisconsin Dep't of Corrections, 182 F.3d 532, 534-35 (7th Cir. 1999), the PLRA contains a "comprehensive administrative exhaustion requirement," which states that "[n]o action shall be brought with respect to prison conditions . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. sec. 1997e(a). Although not depriving the district court of subject-matter jurisdiction, the provision requires dismissal of any case in which an available administrative remedy has not been exhausted. See Perez, 182 F.3d at 535. As Massey knows too well from our decision in Massey I, 196 F.3d at 732-33, dismissal on the pleadings is proper for failure to plead the exhaustion of all administrative remedies. Massey does not, and clearly could not, plead that he exhausted all administrative remedies. Instead, he avers that

there are "no available administrative remedies" and, conversely, that "any administrative remedies that are claimed to exist are in fact a sham." As we stated in Perez, 182 F.3d 536-37, and Massey I, 196 F.3d at 733, there is no "futility exception" to the PLRA exhaustion requirement. His failure to plead exhaustion of all administrative remedies mandates dismissal of his claim without prejudice.

Massey's only route around this inescapable conclusion relies on the argument that dismissal for failure to exhaust administrative remedies is not proper at the pleading stage because exhaustion is an affirmative defense. See Massey I, 196 F.3d at 735 (recognizing administrative exhaustion as an affirmative defense); King v. Cooke, 26 F.3d 720, 724 (7th Cir. 1994). As required by Rule 8(c), the defendants raised the administrative-exhaustion defense in response to Massey's complaint, but moved to dismiss for failure to state a claim rather than for summary judgment under Rule 56, which allows for the consideration of matters outside the pleadings. Fed. R. Civ. P. 8(c), 56. The district court chose to treat the defendants' motion under Rule 12(b)(6) rather than convert the motion to one under Rule 56 by considering matters outside of the complaint. See Fed. R. Civ. P. 12(b); Ribando v. United Airlines, Inc., 200 F.3d 507, 509-10 (7th Cir. 1999). While conversion would not change the outcome in this case, it seems clear from the district court's order that the complaint was found to be deficient on its face, without reference to other pleadings or exhibits, and therefore judgment under Rule 12(b)(6) was proper as to Count One.

B.  Steagall's Third-Party Complaint

In Count Two, Steagall attempts an end-run around the administrative exhaustion requirement by bringing Massey's claims as a third-party plaintiff. In its motion to dismiss, the government addressed in a somewhat backward fashion the issue of whether Steagall had standing to bring a claim on Massey's behalf, but the district court declined to reach the third-party standing issue. Instead, it assumed Steagall was a proper party and decided that his third-party claim should fail on administrative exhaustion grounds. However, because the third-party standing issue disposes of part of this case, it would have been better for the district court to decide it, which we do here.

The prohibition on third-party claims is a prudential standing limitation which recognizes that claims are best prosecuted by those who actually have been injured, rather than by

someone in their stead. See Warth v. Seldin, 422 U.S. 490, 499 (1975). The Supreme Court has established a narrow exception to this doctrine, allowing third-party claims when the third-party plaintiff can show a close relationship between the first and third party and some obstacle to the first party's ability to protect his own interest. See Powers v. Ohio, 499 U.S. 400, 411 (1991); Shimer v. Washington, 100 F.3d 506, 508 (7th Cir. 1996).

When the third-party plaintiff seeks to vindicate First Amendment rights, the Supreme Court has relaxed the requirement that the plaintiff show some obstacle to the first party's ability to bring his own claim. See Secretary of State of Md. v. Joseph H. Munson Co., 467 U.S. 947, 956 (1984). Understanding that some parties who could challenge a statute on First Amendment grounds may choose to forgo litigation to avoid the risk of punishment or retribution, the Court has allowed third parties to bring claims "without regard to the ability of the other to assert his own claims." Id. at 957. We find the Munson line of cases inapplicable to Massey's claim because Massey does not bring a facial challenge to an allegedly overbroad statute. Massey does not attack the constitutionality of any prison regulation, practice or policy; rather he claims that certain prison officials have violated a constitutionally valid speech limitation. There is no allegation or hint that anyone's speech would be chilled if Steagall cannot bring the third-party claim, and therefore the Supreme Court's command that prudential standing requirements be relaxed does not apply. Even so, we doubt the Supreme Court in Munson intended to allow third-party claims when the only obstacle to the first party was a statutory prerequisite such as the exhaustion provision.

Returning to the third-party standing test, we must determine whether any obstacle prevents Massey from bringing his own claim such that we should allow Steagall to bring the claim in Massey's place. This inquiry is a short one. Massey has in fact brought his own claim, and the only hindrance he faces is the administrative exhaustion requirement in the PLRA. The litigious Massey ran head on into the third-party standing rule once before when he attempted to bring a claim through the prison doctor, Dr. John Otten. See Massey I, 196 F.3d at 740-42. In that case we held that "[t]here is no allegation . . . which suggests that the inmates have any obstacle preventing them from properly asserting their own rights." Id. at 741. The same is true here. In fact, despite his record of losing cases, Massey seems quite expert at bringing them. We therefore hold that Steagall does not have standing to

assert a third-party claim to vindicate Massey's rights.

C.  Steagall's First-Party Complaint

In Count Two, attorney Steagall also alleges that his own First Amendment and Fifth Amendment due process rights were violated by the prison's actions in limiting his unmonitored communication with Massey. Steagall, however, developed his complaint poorly and cited almost no authority supporting his claim of constitutionally protected rights. The defendants moved to dismiss under Rule 12(b)(6) on the ground that Steagall failed to allege a constitutionally cognizable injury. The district court held that inmates' attorneys have a right identical to any member of the public to associate or communicate with inmates, but that the prison can place restrictions on that communication that are reasonably related to legitimate penological interests. See Thornburgh v. Abbott, 490 U.S. 401, 409 (1989).

The district court understandably struggled in sorting out Steagall's complaint. Although putatively styled as a simple two-count action, the complaint rambles through fifty-six pages, paragraph after paragraph, alluding to various constitutional guarantees and intermixing argument and repetitive recitations of facts. In the future, Steagall would do well to heed the Rule 8 requirement of a "short and plain statement" of the claim, Fed. R. Civ. P. 8(a)(1), and avoid forcing the court to decipher his complaint, as the district court did here. Reading the complaint "generously" as we must, see Abel v. Miller, 824 F.2d 1522, 1529 (7th Cir. 1987), Steagall asserted the denial of (1) his First Amendment right to communicate with a prisoner, see Thornburgh, 490 U.S. at 407, and (2) his Fifth Amendment due process right to communicate with his client for the purposes of practicing law and accessing the courts./1 See Dreher v. Sielaff, 636 F.2d 1141, 1143 (7th Cir. 1980). But see Abel, 824 F.2d at 1534 (holding that there was no clearly established right to access prisons during threat to prison's security to effectuate attorneys' First and Fifth Amendment rights).

Thornburgh acknowledged several categories of First Amendment-based access to prisoners, including the rights of journalists, family members and magazine publishers, as well as attorneys, to communicate with inmates. 490 U.S. at 407-08. While we also have recognized the importance of unmonitored communication between attorneys and clients, see Adams v. Carlson, 488 F.2d 619, 631 (7th Cir. 1973), no cases cited by

Steagall, nor any found by this Court, establish a right to the unrestricted and unlimited private telephone contacts Steagall sought. Abel, one of the few Fifth Amendment cases expressly dealing with an attorney's right of access, limited its holding to the specific facts of that case, which involved security measures during a prison disturbance. 824 F.2d at 1534. Steagall misses badly when he attempts to use Abel for the proposition that the "court had no problem with the existence of such a right in the attorneys." Rather, the court held that under those facts, the defendants were entitled to summary judgment because the plaintiffs failed to show they had a clearly established right of access to their inmate clients during a prison disturbance under the First and Fourteenth Amendments. Id. The Court held that attorneys must be free from retaliation for exercising their constitutional rights, but it distinguished that claim from one of a right to access prison inmates. Id. Abel, which is factually distinct for the case at bar, does not vest attorneys with a personal right to unlimited and unmonitored telephone contacts with prisoners, and Steagall's gross assertion that Abel stands for such a proposition must fail. The other cases Steagall cited to support his personal claim of constitutional injury similarly are inapplicable. See, e.g., City of Chicago v. Morales, 527 U.S. 41, 52 (1999) (holding that freedom to loiter is protected by Due Process Clause); Zinermon, 494 U.S. at 124 (discussing due process claims of patients voluntarily admitted to mental hospitals).

The rule is clear from Thornburgh, and in Dreher in the Fourteenth Amendment context, 636 F.2d at 1143, that attorneys enjoy rights of access to prison inmates, but that the prison may impose reasonable restrictions on the exercise of that right. In an analogous circumstance, the Third Circuit held that reasonable restrictions on an attorney's visits to a prison did not "constitute an extinguishment or significant alteration of the right to practice law" and therefore failed to state a claim for denial of due process. Sturm v. Clark, 835 F.2d 1009, 1013 (3d Cir. 1987). Nothing alleged in Count Two of Steagall's complaint justifies a contrary conclusion in this case. According to his inartfully-drafted complaint, Steagall enjoyed frequent and free communication with his client, including more unmonitored conversations than apparently any other inmate. The prison's only limit on this free-flowing dialogue was to deny unmonitored telephone calls on less than a handful of occasions when it reasonably appeared that other means of communication were adequate. The district court was correct in finding that the complaint, on its face, showed only

reasonable restrictions on Steagall's right to communicate with Massey and therefore failed to state a claim.

The prison regulation directing the prison warden not to place unnecessary frequency limitations on unmonitored telephone calls may implicate Massey's rights, but it does not create any right in the public to unmonitored communication with an inmate. Steagall does not and cannot claim that he has been denied access to or communication with an inmate, only that limiting the number of unmonitored telephone calls has made it more difficult for him to communicate with Massey. However, the Supreme Court in Thornburgh rejected the rule that prisons must employ the least restrictive means for regulating communication between non-inmates and inmates. 490 U.S. at 411. Steagall's entire claim seeks to imbue his preference for unmonitored telephone calls with constitutional status, but the cases interpreting the public's First Amendment right to communicate with prisoners demand no such result. Steagall's claim does not attack the constitutionality of the prison regulations in any way, therefore we do not need to determine whether that regulation itself is reasonably related to a legitimate penological interest. Instead, Steagall merely seeks to enforce for his own benefit the prison's partial prohibition on limiting unmonitored calls.

Finally, Steagall asserts that the opening of Massey's legal mail by prison officials violated his constitutional right to communicate with his client, but the cases establishing such a right prohibit only the opening of such mail outside the presence of the inmate and characterize the right in terms of the prisoner's First, Sixth and Fourteenth Amendment rights. See, e.g., Wolff v. McDonnell, 418 U.S. 539, 576-77 (1974). Therefore, Steagall failed to state a claim for violation of his constitutional rights by the opening of Massey's legal mail, whether in or out of Massey's presence. Since he does not allege a valid First or Fifth Amendment injury and cannot state a claim for protection of a right under the prison regulations, Steagall has failed to state a claim upon which relief could be granted. Count Two was properly dismissed with prejudice.

III.  Conclusion

For the foregoing reasons, we Affirm the district court's order dismissing Count One without prejudice and Count Two with prejudice.

/1 Steagall errantly cites Fourteenth Amendment cases, see e.g., Zinermon v. Burch, 494 U.S. 108,

124 (1990); Dreher v. Sielaff, 636 F.2d 1141, 1143 (7th Cir. 1980), for the proposition that attorneys have due process rights to access the courts. The Fourteenth Amendment creates a due process right against the states, ("[N]or shall any State deprive any person of life, liberty, or property without due process of law") while the Fifth Amendment guarantees due process by the federal government.