T.C. Memo. 2008-56


UNITED STATES TAX COURT


EDWARD H. JONES, III, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 19400-04.                    Filed March 6, 2008.


        P sought an installment arrangement to pay a
portion of the liability shown on his tax return.
After extensive communications, a 1-year arrangement
was agreed upon, and P paid in full the assessed tax
and interest.  P claims interest abatement under sec.
6404, I.R.C. 1986.  R moves for summary judgment.

        <u>Held</u>:  R's summary judgment motion will be granted
except as to two periods regarding which R failed to
show entitlement to decision as a matter of law.


Edward H. Jones III, pro se.

<u>Lisa M. Oshiro</u>, for respondent.

MEMORANDUM OPINION

CHABOT, Judge: This matter is before us on respondent's motion under Rule 121[1] for summary judgment. Respondent issued a notice of determination disallowing petitioner's claim for abatement of interest with respect to an underpayment of income tax for 2000; petitioner timely petitioned this Court under section 6404[2] to review this disallowance.[3]

---

[1] Unless indicated otherwise, all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1986 as in effect for proceedings commenced at the time the petition in the instant case was filed.

[3] In his petition, petitioner seeks abatement of interest. In his response to respondent's motion for summary judgment and in his memorandum, petitioner seeks abatement of "interest and penalties". We do not have jurisdiction to review failures to abate penalties. Woodral v. Commissioner, 112 T.C. 19, 21 n.4 (1999). We also do not have jurisdiction to review failures to abate additions to tax, such as the sec. 6651(a) amounts that have been assessed in the instant case. Krugman v. Commissioner, 112 T.C. 230, 237 (1999).

Petitioner does not explicitly claim an overpayment in his petition. However, the parties agree that petitioner paid his 2000 tax obligation in full, including interest and penalties, and we so find. Also, petitioner submitted to respondent a claim for refund. Under sec. 6404(h)(2)(B), we have authority to determine that there is an overpayment if we order an abatement of interest. See Goettee v. Commissioner, T.C. Memo. 2003-43; 124 T.C. 286, 288, 295 (2005), affd. 192 Fed. Appx. 212 (4th Cir. 2006); see also Greene-Thapedi v. Commissioner, 126 T.C. 1, 10 n.18 (2006). Under these circumstances, we treat the petition as implicitly raising a claim for overpayment.

Our statements as to the facts are based entirely on the parties' stipulations of facts and exhibits, those matters that are admitted in the pleadings, and those matters that are admitted in the motion papers.

## Background

When the petition was filed in the instant case, petitioner resided in the State of Washington.

Petitioner received an extension of time, until August 30, 2001, to file his 2000 Federal income tax return. He filed this tax return on August 2, 2001. Table 1 sets forth pertinent items shown on this tax return.

## Table 1

### Selected Items on Petitioner's 2000 Tax Return (Form 1040)

| Line on Form 1040 | | Amount Shown |
|---|---|---|
| L.7 | Form W-2 income | $1,283,285 |
| L.8a | Taxable interest | 26 |
| L.13 | Capital loss | (3,000) |
| L.14 | From Form 4797 | 2 |
| L.17 | From Schedule E | (12,125) |
| L.22 | Total income | 1,268,188 |
| L.57 | Tax | 478,130 |
| L.58 | Withholding | 351,727 |
| L.69 | Amount owed | 126,403 |

Petitioner did not send any payment with his 2000 tax return.

On or about June 12, 2001, petitioner telephoned an office of the Internal Revenue Service (hereinafter sometimes referred to as the IRS) to find out how to request an installment payment

plan for an estimated $120,000 remaining obligation on his 2000 income tax.  Petitioner was told to submit a Form 433-F, Collection Information Statement, with a proposed payment plan and supporting justification.  Petitioner submitted his proposed installment plan, his Form 433-F, and his explanation for requesting an installment plan (hereinafter sometimes collectively referred to as the first installment proposal) to the IRS on or about August 4, 2001.[4]  In the first installment proposal petitioner proposed to pay the principal of $130,000[5] over 8 years, in four $32,500 biennial installments, beginning September 1, 2003.  He proposed to make monthly interest payments at a 7.5-percent annual rate on the unpaid principal beginning September 1, 2001.  The monthly interest payments would be $812 for the first 2 years.

---

[4] On May 17, 2003, petitioner sent a letter to the IRS penalty appeals coordinator, in Fresno, Calif., to which he attached several documents, including the following:  (1) Petitioner's appeal statement and facts (in which he states that the first installment proposal was included in his 2000 tax return, received by the IRS on "8/2/2001"), and (2) petitioner's stipulated IRS communication log (in which he states that he sent the first installment proposal on "8/4/2001").  We assume the contemporaneously kept log is probably more accurate than later created narratives, and we have made our findings accordingly.  In this instance, the difference in dates between the statements does not affect our conclusions.

[5] The record does not explain the difference between the $130,000 stated principal and the $126,403 shown as the amount owed on his tax return.  See supra table 1.

On September 3, 2001, the IRS assessed a $3,160.07 "Failure to Pay Tax Penalty" (see supra note 3) and $3,307.90 of interest. On September 10, 2001, the IRS credited petitioner's account with $300 "Immediate Tax Relief Credit" and assessed an additional $178.48 of interest. On each of these dates the IRS sent a statutory notice of balance due to petitioner.

Petitioner's case was assigned to Revenue Officer Karen Krogue (hereinafter sometimes referred to as Krogue) on September 28, 2001.[6] On October 24, 2001, Krogue sent a letter to petitioner stating the balance due on petitioner's account. Krogue and petitioner each attempted to contact the other by telephone on November 8, 2001 (and perhaps other times), and finally met in Krogue's office, in Bellevue, Washington, on November 14, 2001. At this meeting, Krogue and petitioner discussed payment of the balance of petitioner's 2000 tax obligation. Krogue told petitioner that respondent's policy was to collect payment in full if the taxpayer had enough assets to satisfy the tax obligation, but that installment arrangements were possible under certain circumstances. Krogue told petitioner that by December 14, 2001, he was to submit: A Form 433-A, Collection Information Statement for Wage Earners and

_____

[6] So stated in Revenue Officer Krogue's stipulated case notes. Petitioner's response and memorandum state that his case was assigned to Krogue on or about Sept. 24, 2001. This difference does not affect our conclusions.

Self-Employed Individuals, in place of Form 433-F (see Braun v. Commissioner, T.C. Memo. 2005-221, n.7); copies of his bank statements from January 1 to November 14, 2001; his last two paycheck stubs; brokerage information; and mortgage balance.

On December 13, 2001, petitioner mailed to Krogue the material she had requested. Petitioner followed up with Krogue on January 7, 2002, but was unable to reach her. Krogue returned petitioner's call on January 8, 2002, and explained that she would call petitioner the following week and that petitioner should make a payment on his outstanding tax obligation. Petitioner sent a check for $812 to Krogue in response to her request. This was the monthly interest amount set forth in the first installment proposal, described supra. Krogue received petitioner's check on January 10, 2002, and petitioner was credited with an $812 payment as of January 10, 2002.

Petitioner telephoned Krogue on January 30 and February 8, 2002, and left messages because Krogue had not called him. On February 14, 2002, Krogue called petitioner, told him she had been overwhelmed at work and had not yet looked at the materials he had sent in December, and promised to get to his case in the next week. Krogue had not been able to deal with petitioner's case because of the following: Holiday leave; ICS being down;

e-file problems; problems getting computers and printers up and running; helping other revenue officers with a Tax Wise program; and walk-in counter duty.[7]

On February 26, 2002, Krogue performed a "DMV Search" and a "Real Prop Search" to examine petitioner's ownership of motor vehicles and a condominium. Also, on that date she examined the materials petitioner had submitted and noted the additional questions she wanted to ask of petitioner.

On February 26, 2002, Krogue telephoned petitioner while he was on vacation; she left a message. On March 6, 2002, petitioner telephoned Krogue; he left a message.

On March 8, 2002, Krogue telephoned petitioner. On this call, Krogue questioned petitioner about the material he had submitted. In particular, Krogue asked about the following items and petitioner provided the information during this telephone call: (1) Where are the other vehicles listed with the Department of Motor Vehicles? (2) What is the address of the boat and does petitioner pay a monthly slip fee? (3) What is the deduction for health club on petitioner's pay stub? Is it for a club or for insurance? (4) What are the deductions for "ESPP" and "PACC"? (5) How often does petitioner receive bonuses?

---

[7] Krogue's stipulated case notes show this telephone call taking place on Feb. 13, 2002, and Krogue agreeing to get back to petitioner not later than "2/4/02". Our findings are in accord with petitioner's stipulated IRS communication log.

(6) What are the "branch share deposits"?  She then suggested that petitioner propose a payment plan that would fully pay his obligations over a period of less than 7 years, with annual payments of $5-$10 thousand in addition to the $32,500 biennial payments that petitioner had proposed, plus monthly payments. Petitioner agreed to put together another proposal.

On March 12, 2002, petitioner faxed to Krogue a revised installment proposal (hereinafter sometimes referred to as the second installment proposal).  Under the second installment proposal, petitioner would pay $7,500 on September 15, 2002, 2003, and 2004, $40,000 on September 15, 2005, $7,500 on September 16, 2006 and 2007, and another $54,500 also on September 15, 2007.[8]  In addition, petitioner would pay $229 per month, in place of the first installment proposal's 7.5 percent interest payments, which would have started at $812 per month.

On April 2 (Krogue's notes) or 3 (petitioner's notes), 2002, petitioner and Krogue discussed the second installment proposal. Krogue indicated she would try to get her supervisor to agree to it if petitioner would agree to increase the monthly payments from $229 to $350.  Petitioner agreed to this change.  The lump-sum payments would be set for September 17, rather than September 15, of each year.  Krogue suggested that petitioner make a

---

[8] So stated on the stipulated copy of the second installment proposal.  It appears that the $54,500 payment was intended to be proposed for Sept. 15, 2008.

monthly $350 payment at this point, but, petitioner's notes indicate: "I make no payment thinking I will be paying per a formal agreement in the near future."

On April 4, 2002, Krogue reviewed the Internal Revenue Manual provisions regarding installment payment plans and concluded that petitioner could fully pay his 2000 tax obligation and so did not qualify for an installment payment plan. Krogue spoke with petitioner on April 24, 2002, and explained that she could not accept petitioner's installment plan because petitioner had assets sufficient to fully pay his 2000 tax obligation. Krogue agreed to speak with her supervisor, Craig Rogers (hereinafter sometimes referred to as Rogers), about the matter and, if Rogers agreed with Krogue's conclusion, then petitioner could speak with Rogers. Rogers agreed with Krogue that petitioner had assets sufficient to fully pay his 2000 tax obligation and, consequently, petitioner's request for an installment payment plan should be denied.

On May 1, 2002, Krogue told petitioner that Rogers agreed with her that petitioner was not eligible for an installment payment arrangement. She advised petitioner that he could discuss the matter with Rogers. Petitioner complained about the delay in receiving this ruling; he told Krogue that, if Krogue had told him that he was ineligible when they first began to work together on this payment problem, then he could have sold his

American Express stock and had more than enough left over after his margin loan to pay his 2000 tax liability in full and have $100,000 in addition. Now, petitioner said, the net proceeds of a sale would not be enough to pay the liability in full. Petitioner and Krogue then discussed the possibility of an arrangement with the liability being paid at the end of the year.

Petitioner then spoke with Rogers that same day. Petitioner explained to Rogers petitioner's impression that an installment plan was possible, that he had a tentative agreement with Krogue for an installment plan, and that if petitioner had known an installment plan was not an option, then he would have made different decisions regarding asset management. Rogers agreed to reconsider petitioner's proposal for an installment plan.

Petitioner telephoned Rogers on May 10, 2002. Rogers told petitioner that Krogue would call petitioner with the details of a 1-year installment plan that would be offered to petitioner. Krogue telephoned petitioner on May 17, 2002, and left a message. Petitioner telephoned Krogue on May 20, 2002, and left a message.

Krogue telephoned petitioner on May 21, 2002, regarding the monthly installments and the total amount due. They agreed to $400 monthly installment amounts for 11 months with the balance due on the 12th month, but they did not agree on the total amount due. Specifically, they disagreed about the interest and penalties that had accrued since Krogue first received

petitioner's case.  Petitioner then spoke with Rogers and reiterated his objections to the accrued interest and penalties. Rogers declined to abate petitioner's penalties and explained that petitioner could file an appeal of this decision with the Office of the Taxpayer Advocate.

Petitioner received the necessary forms from Krogue on May 31, 2002.  He noticed that the installment payment plan required monthly payments of $600 instead of $400.  There followed a series of missed telephone calls.  On June 12, 2002, petitioner telephoned Krogue, who agreed that petitioner should cross out the $600 and replace it with $400, sign the forms as corrected, and return the forms to Krogue.  Krogue received the signed forms on June 14, 2002.  On June 24, 2002, petitioner received a notification that the IRS accepted the 1-year installment arrangement.  The next day, petitioner mailed the first $400 monthly payment, which was credited to his 2000 tax account on June 27, 2002.  A 2001 overpayment of $4,343 was credited to petitioner's 2000 tax account as of April 15, 2002.

Petitioner continued to make his monthly installment payments through November 2002.  On December 13, 2002, petitioner paid his remaining 2000 tax obligation in full, including interest and penalties.

Respondent's failure to abate interest for the period November 14 through December 13, 2001, was not an abuse of discretion.

Respondent's failure to abate interest for the period December 14, 2001, through February 25, 2002, was not an abuse of discretion, other than to the extent to which such failure related to one or more managerial acts.

Respondent's failure to abate interest for the period February 26 through May 30, 2002, was not an abuse of discretion.

Krogue's error in requiring monthly payments of $600, instead of the $400 that had been agreed upon, was an error in performing a ministerial act.

Respondent's failure to abate interest for the period June 26 through December 13, 2002, was not an abuse of discretion.

## Discussion

1. Parties' Contentions, Summary, and Conclusions

Petitioner brought the instant case to seek abatement of interest. (See supra note 3, as to penalties and additions to tax.) Respondent moved for summary judgment.

Petitioner contends that respondent's personnel "provided inaccurate information * * * [and] were dilatory in performing their managerial and ministerial acts", and so this Court should order an abatement of interest. Respondent contends that: (1) The delay in petitioner's tax payment (giving rise to the

interest sought to be abated) was not caused by any error or dilatory action of respondent in performing a managerial or ministerial act, (2) petitioner was solely responsible for the delay in paying the taxes shown on his tax return, and (3) respondent did not abuse respondent's discretion in denying petitioner's request to abate interest.

It is not enough for petitioner to show that interest is attributable to IRS officers' or employees' being erroneous or dilatory; he also must show that they were erroneous or dilatory "in performing a ministerial or managerial act". Sec. 6404(e)(1)(B). Further, petitioner must show that respondent's failure to abate interest was an abuse of discretion. However, by moving for summary judgment, respondent has assumed the obligation of showing that respondent is entitled to a decision as a matter of law. See Rule 121(b).

By and large, respondent has satisfied this obligation. However, we conclude that, as to portions of two periods respondent has come up short because of the absence of information or even clear allegations--one involving delays in performing managerial acts and one involving an error in performing a ministerial act.

Accordingly, respondent's motion for summary judgment will be granted in part and denied in part.

2.  <u>Summary Judgment</u>

Summary judgment is a procedure used to expedite litigation; it is intended to avoid unnecessary and expensive trials. However, it is not a substitute for trial; it should not be used to resolve genuine disputes over material factual issues.  <u>Cox v. American Fidelity & Casualty Co.</u>, 249 F.2d 616, 618 (9th Cir. 1957); <u>Vallone v. Commissioner</u>, 88 T.C. 794, 801 (1987).  A motion for summary judgment will be granted "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law."  Rule 121(b).

Because the effect of granting a motion for summary judgment is to decide the case against a party without allowing that party an opportunity for trial, the procedure should be "cautiously invoked" and the motion should be granted only after a careful consideration of the case.  <u>Associated Press v. United States</u>, 326 U.S. 1, 6 (1945); <u>Cox v. American Fidelity & Casualty Co.</u>, 249 F.2d at 618; <u>Kroh v. Commissioner</u>, 98 T.C. 383, 390 (1992). The moving party has the burden of showing the absence of a genuine issue as to any material fact.  <u>Dahlstrom v. Commissioner</u>, 85 T.C. 812, 821 (1985).  For these purposes, the party opposing the motion is to be afforded the benefit of all

reasonable doubt, and the material submitted by both sides must be viewed in the light most favorable to the opposing party; that is, all doubts as to the existence of an issue of material fact must be resolved against the movant.  E.g., <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970); <u>Dreher v. Sielaff</u>, 636 F.2d 1141, 1143 n.4 (7th Cir. 1980); <u>Kroh v. Commissioner</u>, 98 T.C. at 390.

3.  <u>Abatement of Interest</u>

   a.  <u>In General</u>

   Section 6404(e)(1)[9] authorizes the Commissioner to abate

_____

[9] Sec. 6404(e)(1) provides as follows:

SEC. 6404.  ABATEMENTS.

   *      *      *      *      *      *      *

   (e)  Abatement of Interest Attributable to Unreasonable Errors and Delays by Internal Revenue Service.--

      (1) In general.--In the case of any assessment of interest on--

         (A) any deficiency attributable in whole or in part to any unreasonable error or delay by an officer or employee of the Internal Revenue Service (acting in his official capacity) in performing a ministerial or managerial act, or

         (B) any payment of any tax described in section 6212(a) to the extent that any unreasonable error or delay in such payment is attributable to such an officer or employee being erroneous or dilatory in performing a ministerial or managerial act,
                                          (continued...)

assessed interest attributable to unreasonable errors or delays by IRS employees or officials in performing ministerial or managerial acts. The Commissioner may abate interest only when no significant aspect of the error or delay is attributable to the taxpayer and only for time periods after the IRS has contacted the taxpayer in writing with respect to the tax payment.[10]

Section 6404(e) does not define the terms "ministerial act" and "managerial act". Section 301.6404-2(b), Proced. & Admin. Regs., provides as follows:

§ 301.6404-2. Abatement of interest. * * *

\* \* \* \* \* \* \*

(b) Definitions.--(1) Managerial act.--means an administrative act that occurs during the processing of a taxpayer's case involving the temporary or permanent loss of records or the exercise of judgment or discretion relating to management of personnel. A decision concerning the proper application of federal

---

[9](...continued)
the Secretary may abate the assessment of all or any part of such interest for any period. For purposes of the preceding sentence, an error or delay shall be taken into account only if no significant aspect of such error or delay can be attributed to the taxpayer involved, and after the Internal Revenue Service has contacted the taxpayer in writing with respect to such deficiency or payment.

[10] The instant case involves a failure to timely pay the tax liability shown by petitioner on his timely filed tax return and not a deficiency. Accordingly, respondent is correct in asserting that subpar. (A) of sec. 6404(e)(1) does not apply, and petitioner does not contend otherwise.

tax law (or other federal or state law) is not a managerial act. Further, a general administrative decision, such as the IRS's decision on how to organize the processing of tax returns or its delay in implementing an improved computer system, is not a managerial act for which interest can be abated under paragraph (a) of this section.

(2) Ministerial act.--means a procedural or mechanical act that does not involve the exercise of judgment or discretion, and that occurs during the processing of a taxpayer's case after all prerequisites to the act, such as conferences and review by supervisors, have taken place. A decision concerning the proper application of federal tax law (or other federal or state law) is not a ministerial act.

Section 6404(h)[11] authorizes this Court to decide whether

---

[11] Sec. 6404(h) provides, in pertinent part, as follows:

SEC. 6404. ABATEMENTS.

      *      *      *      *      *      *      *

(h) Review of Denial of Request for Abatement of Interest.--

(1) In general.--The Tax Court shall have jurisdiction over any action brought by a taxpayer who meets the requirements referred to in section 7430(c)(4)(A)(ii) to determine whether the Secretary's failure to abate interest under this section was an abuse of discretion, and may order an abatement, if such action is brought within 180 days after the date of the mailing of the Secretary's final determination not to abate such interest.

(2) Special rules.--

(A) Date of mailing.--Rules similar to the rules of section 6213 shall apply for purposes of determining the date of the mailing referred to in paragraph (1).

(continued...)

The Commissioner's failure to abate such interest is an abuse of discretion and, if so, then to order an abatement.  See Krugman v. Commissioner, 112 T.C. 230, 238-240 (1999); Woodral v. Commissioner, 112 T.C. 19, 25 (1999).

We proceed to consider the application of the foregoing to the time periods drawn in question.[12]

b.  Time Periods

The petition does not specify the period for which petitioner seeks interest abatement.  The claim for refund petitioner submitted to respondent appears to be for the period September 3, 2001, through December 13, 2002.  Petitioner's response to respondent's summary judgment motion specifies the period November 14, 2001, through December 13, 2002.  Respondent's memorandum deals with the period April 15, 2001, through December 13, 2002.  Petitioner's memorandum again asks

---

[11](...continued)

> (B) Relief.--Rules similar to the rules of section 6512(b) shall apply for purposes of this subsection.

> (C) Review.--An order of the Tax Court under this subsection shall be reviewable in the same manner as a decision of the Tax Court, but only with respect to the matters determined in such order.

[12] Petitioner does not contend that respondent's interest calculations contain computational errors.  Compare Goettee v. Commissioner, 124 T.C. at 288, 292, T.C. Memo. 2003-43, Opin. Part II; affd. 192 Fed. Appx. 212 (4th Cir. 2006), where the taxpayers did make such a contention.

for relief for the period November 14, 2001, through December 13, 2002. We take it that petitioner has abandoned any claim for abatement for periods before November 14, 2001, the date petitioner and Krogue first met each other in Krogue's office. Under these circumstances, we shall not comment on respondent's contentions insofar as they relate to periods before November 14, 2001. Also, petitioner's claim is entirely under section 6404(e), and he does not claim entitlement to an abatement under section 6404(f); we shall not comment on respondent's contentions regarding section 6404(f).

### (1) First Period (Nov. 14--Dec. 13, 2001)

At their November 14, 2001, meeting Krogue told petitioner that respondent's policy was to collect payment in full if the taxpayer had enough assets to satisfy the tax liabilities but that installment arrangements were possible under certain circumstances. She told petitioner to submit certain materials by December 14, 2001. Petitioner mailed the requested material to Krogue on December 13, 2001. Krogue was engaged in the process of gathering the information and documentation appropriate to lay the foundation for a decision as to whether the IRS should allow petitioner to extend the period for payment of his acknowledged tax liability. Petitioner's summary of what

Krogue told him appears to correctly describe the IRS's policy in such matters.  As best we can tell from petitioner's memorandum, the gravamen of petitioner's claim is that--

> if she [Krogue] had determined that I had the assets to pay the tax in full, was it not her duty to demand payment in full at that time?  With the fact that my ability to pay was clearly eroding throughout the time in which Ms. Krogue was assigned to my case (due to a decline in the value of my investment portfolio), why was Ms. Krogue unable to determine I had the ability to pay in (or before) November, 2001, yet able to determine I could in April, 2002, when I clearly had less ability to pay?

As it developed, the IRS and petitioner ultimately did agree on an installment arrangement, although it was far less generous than that which petitioner proposed.  Thus, the matter was not open and shut, as petitioner seems to contend.  Krogue described the basic ground rules to petitioner and proceeded to gather information helpful to a determination on this matter.

Viewing the record most favorably to petitioner, we conclude that Krogue's actions were neither erroneous nor dilatory in performing a ministerial or managerial act during the first period.  We shall grant respondent's summary judgment motion with respect to the first period.

(2)  <u>Second Period (Dec. 14, 2001--Feb. 25, 2002)</u>

Petitioner and Krogue back-and-forthed telephone calls. On one of these telephone calls Krogue explained to petitioner what matters had been keeping her from attending to petitioner's case. On February 26, 2002, Krogue examined the material petitioner had

submitted and also did some other research as to petitioner's motor vehicles and real property. She telephoned petitioner, who was on vacation; she left a message.

It is clear that "the ball was in the IRS's court" during this period, and nothing happened to move the matter along until February 26, 2002.[13]

However, a statutory requirement for any relief is that the IRS's error or delay be in performing a ministerial or managerial act. Sec. 6404(e)(1)(B).

Krogue's evaluating petitioner's submitted materials and otherwise researching petitioner's assets are not ministerial acts because (1) they involve the exercise of judgment or discretion, (2) supervisors' review had not yet taken place, and (3) they involve the proper application of Federal tax law. See sec. 301.6404-2(b)(2), Proced. & Admin. Regs.; Corson v. Commissioner, 123 T.C. 202, 207 (2004); Lee v. Commissioner, 113 T.C. 145, 149-150 (1999); Goettee v. Commissioner, T.C. Memo. 2003-43 (I. Abatements of Interest) (quoting Minahan v. Commissioner, 88 T.C. 492, 505 (1987)), affd. 192 Fed. Appx. 212 (4th Cir. 2006). Consequently, during the second period Krogue was not being erroneous or dilatory in performing a ministerial act.

---

[13] On Jan. 8, 2002, Krogue told petitioner he should make a payment; 2 days later she had petitioner's check for the first payment on petitioner's first installment proposal.

We proceed to examine the alternative statutory requirement relating to a managerial act.

Respondent concedes that--

> The decision not to reassign petitioner's case during Revenue Officer Krogue's leave over the holidays or while she assisted other revenue officers with the TaxWise program is a management [managerial?] act under I.R.C. § 6404(e)(1). See Treas. Reg. §§ 301.6404-2(b)(1) and (c), Example 5.

However, respondent contends (1) this decision was not an error or dilatory act, (2) the delay was not for an unreasonable period of time,[14] (3) the ICS being down and e-file problems are not managerial acts, and (4) the dedication of personnel to the e-file program and walk-in counter duty are general administrative decisions and are not managerial acts for which interest can be abated under the provisions before us. On the last point, respondent cites section 301.6404-2(c), Examples (8) and (9), Proced. & Admin. Regs.

In evaluating these contentions we bear in mind that: (1) The setting is respondent's motion for summary judgment and not a submitted case, (2) all the relevant facts occurred in the IRS's operations, and (3) respondent's submissions do not include

---

[14] On memorandum, respondent states as follows:

There is no evidence that Revenue Officer Krogue was granted an extended period of leave or that she provided assistance to other revenue officers for an extended period of time. In fact, the timeline of events suggest that these events were not for an extended period.

details on these matters.  Respondent has not directed our attention to standards for determining what is "an extended period" under these circumstances.  See supra note 14. Respondent has not told us how long Krogue's leave was, how long Krogue was assisting other revenue officers or filling other roles, and how ICS being down and e-file problems affected Krogue's duties.  Also, examples 8 and 9 of the regulations, relating to prioritization of tax return processing and auditing a tax shelter before auditing an investor in the shelter, are clearly distinguishable from the activities briefly mentioned in the materials submitted to us in connection with respondent's summary judgment motion.

In order to be entitled to summary judgment respondent must show "that a decision may be rendered as a matter of law."  See Rule 121(b).  Because of the above-described lack of clarity as to material facts, we conclude that respondent has failed to make the necessary showing.

Accordingly, we shall deny respondent's summary judgment motion as to the managerial act alternative for the second period.

(3)  Third Period (Feb. 26--June 24, 2002)

This period included a number of important dealings between petitioner and Krogue.  Krogue suggested changes to the first installment proposal to make it more likely to be accepted.

Petitioner submitted the second installment proposal. Petitioner made a further modification at Krogue's suggestion. Krogue did further research and concluded that the modified second installment proposal would not be acceptable. Krogue's supervisor (Rogers) agreed with Krogue. Petitioner spoke with Rogers, who agreed to reconsider the matter. Rogers then decided that he and Krogue were correct and the modified second installment proposal was not acceptable. Rogers then directed Krogue to offer a 1-year installment arrangement, which petitioner reluctantly accepted. Krogue made a mistake on the forms she sent to petitioner. After a series of missed telephone calls, Krogue agreed she had made a mistake and directed petitioner to ink in the corrections. Petitioner sent the corrected forms to Krogue. Petitioner was notified that the IRS accepted the 1-year installment arrangement. The next day, June 25, 2002, petitioner mailed the first monthly payment.

Most of the time during this period, the matter proceeded toward resolution. Krogue's failure to realize sooner that the modified second installment proposal would not be acceptable was not an error or delay in performing ministerial acts because (1) it involved the exercise of judgment or discretion, (2) supervisors' review had not yet taken place, and (3) it involved the proper application of Federal tax law. See sec. 301.6404-2(b)(2), Proced. & Admin. Regs. Consequently, until the

rejection of the modified second installment proposal, Krogue was not being erroneous or dilatory in performing a ministerial act.

The negotiation of the IRS's detailed proposal did not involve an error or delay.

On May 31, 2002, petitioner received the necessary forms from Krogue and noticed that they required $600 monthly payments instead of the agreed-upon $400 monthly payments.  They back-and-forthed, finally speaking on June 12, 2002.  Krogue's notes are as follows:

> TP/POA CONTACT
>   RESULTS:  TC from TP.  Reviewed RO history and
> 5/21/02 history states that IA should be for $400.00 a
> month.  Agreed w/TP and ask him to cross out the
> $600.00 and input $400.00, sign and return to RO.  TP
> agreed.

This error did not involve the exercise of judgment or discretion, the supervisor's review had already taken place, and there was no problem of application of Federal tax law.  We conclude, and we have found, that in this matter Krogue was erroneous in performing a ministerial act.

The record does not show whether the delay in processing the installment payment agreement resulted in a delay in making payments of tax, within the meaning of section 6404(e)(1)(B). For purposes of respondent's summary judgment motion, in the absence of any reason to conclude otherwise, we assume that Krogue's error, which came to petitioner's attention on May 31, 2002, and was corrected on June 12, 2002, caused a delay of at

least 13 days in the processing of the installment payment agreement, and a concomitant delay in the start of petitioner's payments under the agreement. Further examination into what happened may result in a different conclusion. Whether Krogue's error resulted in a delay in payment is an uncertainty as to a material fact and to this extent we conclude that respondent has failed to make the showing necessary to warrant granting the summary judgment motion. See Dahlstrom v. Commissioner, 85 T.C. at 821.

Accordingly, we shall deny respondent's summary judgment motion with respect to the May 31 through June 24, 2002, portion of the third period.

However, we conclude and we have found that, during the third period through May 30, 2002, neither Krogue nor Rogers was erroneous or dilatory in performing a ministerial or managerial act. We shall grant respondent's summary judgment motion with respect to this portion of the third period.

(4) Fourth Period (June 25--Dec. 13, 2002)

Petitioner mailed the first payment on his 1-year installment plan on June 25, 2002, and continued making monthly payments through November 2002. Petitioner paid the balance of his 2000 tax obligation on December 13, 2002. The record herein does not show contacts between petitioner and the IRS during this period other than petitioner's mailing his payments to the IRS.

Petitioner does not direct our attention to any actions or failures to act by IRS employees that could be considered erroneous or dilatory ministerial or managerial actions or failures to act during this period.

Viewing the record most favorably to petitioner, we conclude that no IRS officials or employees were erroneous or dilatory in performing a ministerial or managerial act during the fourth period. We have found that respondent's failure to abate interest for this period was not an abuse of discretion. We shall grant respondent's summary judgment motion with respect to the fourth period.

c. Other Matters

(1) Petitioner's Deemed Motion

Petitioner does not appear to dispute respondent's contention that there is no genuine issue as to any material fact, but he requests "adjudication in my favor" on the merits of the underlying case. We have occasionally treated such situations as deemed cross-motions for summary judgment. If we had done so in the instant case, however, we would be constrained to deny the deemed cross-motion. As to those parts of respondent's motion that we grant, it is clear that petitioner's case is lost. As to those parts of respondent's motion that we deny, we do so not because the record shows that petitioner should prevail, but because respondent has failed to present

statements about matters of fact necessary to justify the granting of summary judgment to respondent. The same absence of information would require us to deny a deemed cross-motion. Under these circumstances, it would be fruitless for us to go through the detailed analysis necessary for a deemed cross-motion for summary judgment.

(2) Deceit

In his response to respondent's summary judgment motion, petitioner charged that his overpayment of interest "was directly attributable to unreasonable errors, deceit, and dilatory performance of managerial and ministerial acts by IRS officers acting in their official capacities." We note that petitioner did not include the "deceit" contention in his later memorandum. To make the matter clear, we have examined the material before us and we conclude that this material does not show that Krogue, Rogers, or any other IRS employee or official committed any act of deceit against petitioner in the instant case.

(3) Petitioner's Responsibility

Respondent contends that "Petitioner was solely responsible for the delay in paying the taxes due per his tax return". This contention is intended to invoke the statutory provision that "an error or delay shall be taken into account only if no significant aspect of such error or delay can be attributed to the taxpayer involved". Sec. 6404(e)(1) (final flush language).

Respondent's explanation for this contention is as follows: "Petitioner was advised on two occasions to make tax payments. In response to the first suggestion, made on January 8, 2002, he made one de minimus payment of $812.00. He ignored the second request which was made on April 3, 2002."

The $812 payment was the first payment required under the first installment proposal. Petitioner made the payment promptly on receiving Krogue's suggestion, and petitioner was credited with that payment on January 10, 2002.

When petitioner and Krogue succeeded in communicating again, Krogue suggested that petitioner submit a new proposal. As a result, petitioner promptly submitted the second installment proposal. The April 3, 2002, discussion that respondent refers to occurred 4 weeks after Krogue had questioned petitioner at length about his submissions and 3 weeks after she received the second installment proposal. Krogue asked petitioner to make a $350 monthly payment on the modified second installment proposal, but petitioner expected this proposal to be approved shortly and so held off. However, in short order the modified second installment proposal was rejected.

On the basis of the foregoing analysis of the only specifics that respondent offers, we conclude that petitioner generally responded promptly to Krogue's requests and directions and, to use respondent's words, petitioner was not solely responsible for

the delay in paying the taxes due per his tax return, and so that is not a basis for denying petitioner's claim for abatement of interest.  Nevertheless, petitioner will not succeed in most of his abatement claim for reasons set forth in the preceding portions of this opinion granting in part respondent's summary judgment motion.  Also, as we have made plain, our ruling against part of respondent's summary judgment motion is not a ruling for petitioner on any part of the underlying claim.

To take account of the foregoing,

<u>An appropriate order will be issued granting in part and denying in part respondent's motion for summary judgment</u>.