T.C. Memo. 2015-36

UNITED STATES TAX COURT

CHARLES W. KING, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6374-11L.                    Filed March 9, 2015.

Charles W. King, pro se.

Catherine S. Tyson, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PARIS, Judge:  In a Notice of Determination Concerning Collection

Action(s) Under Section 6320 and/or 6330[1] (notice of determination) respondent

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*2] sustained collection action through the filing of a notice of Federal tax lien for unpaid employment tax liabilities for the following taxable quarters: March 31, June 30, and September 30, 2002;[2] March 31, June 30, September 30, and December 31, 2003; March 31, June 30, and September 30, 2005; March 31, June 30, September 30, and December 31, 2006; September 30 and December 31, 2007; and March 31 and June 30, 2008 (quarters at issue). Petitioner filed a petition in this Court and subsequently paid all of the employment taxes, penalties, additions to tax, and interest. Petitioner asks the Court to grant abatement for penalties, additions to tax, and interest on account of respondent's alleged erroneous advice and delay.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.[3] The parties do not dispute and/or the record establishes the following. Petitioner resided in Illinois when the petition was filed.

Petitioner is an attorney with 50 years of experience practicing law. He has been a sole practitioner for over 40 years in a small town in Illinois and operated a

---

[2]The notice of Federal tax lien that respondent filed included an amount for the December 31, 2002, quarter, but this quarter was not listed on the notice of determination.

[3]At trial petitioner waived his initial objections to the stipulation of facts.

**[*3]** law firm with at least one employee for all quarters at issue. As an employer, petitioner was required to file Forms 941, Employer's Quarterly Federal Tax Return, and remit payments for employment tax liabilities for the quarters at issue. Petitioner did not timely file Forms 941 and/or make deposits of the employment taxes for the quarters at issue.

Respondent's examining agent Mr. Proffitt in respondent's Cincinnati, Ohio, office conducted an examination for the quarters at issue. In the course of the examination respondent received from petitioner on February 25, 2009, a Statement of Disputed Issues, and some of the Forms 940, Employer's Annual Federal Unemployment (FUTA) Tax Return, and Forms 941 that respondent had requested. Petitioner disputed respondent's records in regard to several missing payments and returns. He was able to document his employment tax liability payments for the quarters ending December 31, 2004; December 31, 2005; March 31, 2007; and June 30, 2007. Petitioner also documented that he had filed Forms 941, either timely or as a result of the examination, for the quarters ending March 31, June 30, September 30, and December 31, 2006; March 31, June 30, September 30, and December 31, 2007; and March 31 and June 30, 2008. Respondent accepted some of petitioner's changes to his liabilities but not to the full extent that petitioner proposed.

**[*4]** After making the agreed adjustments, Mr. Proffitt sent petitioner (for the quarters at issue except the March 31 and June 30, 2008, quarters) Form 4666, Summary of Employment Tax Examination; Form 4668, Employment Tax Examination Changes Report; and Form 886-A, Explanation of Items. Form 4666 showed a total tax due of $36,540.67 and total penalties due of $12,789.23 for a total amount due of $49,329.90. Form 886-A stated that petitioner had 30 days to respond to the examination determination if he did not agree with it.

Petitioner did not dispute the adjusted underlying liabilities but was unable to pay the entire amount as a lump sum. Petitioner's assets included approximately $26,600 of stock, but his primary assets would have to be sold or refinanced to pay the total amount due in full. Those assets included several partial interests in real estate, including his principal residence, an office building, and several inherited properties. He owned all of the real estate jointly with either his wife or his sister, neither of whom was obligated on the tax liabilities. Petitioner's law office building, which he owned jointly with his wife, was free of encumbrances. Petitioner immediately listed his law office for sale in part to pay his employment tax liabilities but was unable to attract any buyers.

On March 5, 2009, petitioner, continuing to work with his examining agent, sent correspondence by fax and mail to Mr. Proffitt asking for an installment

**[*5]** agreement for the remaining liabilities (petitioner's March 5, 2009, letter).

The letter stated in relevant part:

> I would like to respectfully request that a payment plan for me be accepted, on any and all amounts which are ultimately determined to be due, under which I would be permitted to make monthly installment payments, each due on the 1st day of each month, for a period of 60 months, of equal amounts each month, or upon payment of larger amounts, to be applied to the account, when I have additional funds to make such larger payments.

> Also on March 5, 2009, respondent's Cincinnati office sent petitioner a

letter (respondent's March 5, 2009, letter) that stated in relevant part:

> This is in response to your correspondence of March 5, 2009. We have considered the information that you have submitted and will be happy to honor your request for an installment payment plan. However, before we process your installment agreement request it will be necessary for you to sign, date and return the revised Forms 2504 we sent to you on February 27, 2009, within ten days.

> For Forms and Publications visit our website at www.irs.gov or call 1-800-829-3676 to order.

> Our cover letter states the telephone contact hours are 7:00 am - 7:00 pm, EST. If you wish to speak directly with me, you may reach me from 4:30 pm - 7:00 pm EST, Monday - Friday.

The letter was signed by a J. Oliver, and underneath the signature line were the words "Tax Technician". The record does not indicate why Mr. Proffitt did not respond to petitioner's March 5, 2009, letter even though it was addressed directly to him.

**[\*6]** Petitioner sent respondent two Forms 2504, Agreement to Assessment and Collection of Additional Tax and Acceptance of Overassessment, on March 12, 2009, for quarters at issue between March 2002 and September 2007. The total amount of tax reflected on the Forms 2504 was $36,540.67. The total amount of penalties and additions to tax reflected on the Forms 2504 was $12,789.23. Accompanying the Forms 2504 was a typed letter from petitioner (March 12, 2009, letter) to respondent that stated in relevant part: "I would like to repeat the request made in my March 5, 2009 letter to Mr. Proffitt (#0197344) that an installment payment plan be accepted, under which I would be permitted to make monthly installment payments, each due on the 1st day of each month, of equal amounts each month, or upon payment of larger amounts, for a period of 60 months."

Petitioner was not provided Form 9456, Installment Agreement Request, at that time. He did not access the Internal Revenue Service (IRS) Web site or call the 800 number provided in the letter from Mr. Oliver in regard to the form, nor was he given specific instruction that he was supposed to be seeking Form 9456. The only forms that respondent provided petitioner to fill out were the two Forms 2504, which he promptly executed. The liabilities reflected on the Forms 2504 of approximately $49,330, plus statutory interest, were assessed on April 13, 2009.

**[*7]** Respondent's Cincinnati office did not respond to the March 12, 2009, letter. The computer input code for a pending installment agreement was not entered upon respondent's receipt of petitioner's March 5, 2009, letter or his March 12, 2009, letter. On May 18, 2009, respondent sent petitioner approximately 17 Notices CP 504 entitled "Urgent!! We intend to levy on certain assets. Please respond NOW."[4]

Petitioner called the Cincinnati office in June 2009 to inquire about his installment agreement and the Notices CP 504. Petitioner was told that Mr. Oliver was on medical leave and that petitioner might be entitled to some relief if he contacted the Taxpayer Advocate Service (TAS). Petitioner contacted the TAS on June 5, 2009, and spoke with Taxpayer Advocate (TA) Lana Morrell on June 10, 2009. TA Morrell sent petitioner information about collection alternatives and told petitioner that he would have to provide financial information in order for her to determine his eligibility for an installment agreement. On July 2, 2009, petitioner told TA Morrell that he believed he could pay $1,000 per month toward

[4]"No levy may be made on taxpayer accounts * * * while requests for installment agreements are pending". Internal Revenue Manual (IRM) pt. 5.14.1.5 (Sept. 26, 2008). The input codes for pending installment agreements prevent collection action. See id. pt. 5.14.1.3(3). An installment agreement request is to be identified as a pending installment agreement if it meets certain designated requirements. Id. pt. 5.14.1.3(4) and (5).

[*8] his employment tax liabilities. TAS received from petitioner the requested financial information on July 13, 2009.

TA Morrell reviewed petitioner's financial information on August 5, 2009, and concluded that petitioner's substantial monthly income and low-to-moderate monthly expenses would allow him to pay more than the $1,000-per-month payment that he proposed. She suggested that petitioner sell either his law office building or another interest in real estate to pay the liabilities. On August 5, 2009, TA Morrell told petitioner that TAS did not have authority to process collection options in his case. A revenue officer (RO) had to consider his installment agreement request (once petitioner sent in additional required financial information) because of the large amount owed and because the debt was business debt. She also told petitioner that he needed to file Forms 941 for an installment agreement to be considered.

A computer input code for a pending installment agreement was entered into petitioner's electronic account transcripts on August 18, 2009. The record does not indicate that petitioner filed a Form 9456 or sent respondent any other material that would cause an input code to be entered at that time. The TAS case information history report contains an entry on September 4, 2009, noting the

[*9] input code on petitioner's transcripts and also noting that petitioner's file did not contain any information about a recently proposed installment agreement.[5]

Petitioner continued to send TA Morrell additional information and had multiple followup telephone calls with her to check the status of his case. On September 4, 2009, TA Morrell received the financial information required to transfer petitioner's case to an RO. On November 30, 2009, TAS sent petitioner a letter explaining that TA Morrell was in the process of sending a request to the IRS Service Center to have his account assigned to an RO and apologizing "for any concerns you have experienced regarding actions taken by the IRS, or lack thereof, in response to your request for an installment agreement for your employment taxes." On January 13, 2010, TA Morrell recommended that an RO be assigned to assist petitioner with establishing an installment agreement or other form of payment plan. Respondent's field office told TAS several times that petitioner's case had to be assigned to a "Grade 12" RO and that the only qualified

---

[5]Respondent implies in his motion for summary judgment, which the Court denied on September 21, 2011, that the August 18, 2009, input code correlates with the installment agreement request in petitioner's March 5, 2009, letter. See Mot. Summ. J. 6 ("The certified transcripts show that an installment agreement was pending as of August 18, 2009. Hence, in this case, * * * [respondent's] March 5, 2009 letter was correct and the pending installment agreement was notated in the petitioner's accounts.").

[*10] RO in the area had a full inventory of cases. During that time TAS had holds placed on petitioner's account to freeze collection activity.

On or around March 15, 2010, petitioner's case was assigned to a qualified RO. TA Morrell sent petitioner a letter on March 26, 2010, stating that the RO should be contacting him within 30 to 60 days. The RO met with petitioner by April 6, 2010. TAS closed petitioner's case on April 9, 2010.

On April 13, 2010, respondent sent petitioner a Final Notice, Notice of Intent to Levy and Notice of Your Right to a Hearing (levy notice) for the quarters at issue.[6] Respondent sent petitioner two Notices of Federal Tax Lien Filing and Notice of Your Right to a Hearing Under IRC 6320 (NFTL) on April 27, 2010, for the quarters at issue.[7] On April 20, 2010, petitioner sent the RO Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and on April 30, 2010, sent Form 9456 requesting an installment

---

[6]As petitioner did not file a collection due process (CDP) hearing request within 30 days of the levy notice, the levy is not properly before the Court. See sec. 301.6330-1(f), Proced. & Admin. Regs. Respondent's counsel stated at trial that she did not know what had become of the levy notice.

[7]Respondent filed the lien notices with the County Clerk and Recorder for Wabash County in Mount Carmel, Illinois; with the County Recorder for Gibson County in Princeton, Indiana; and with the Recorder of Deeds for Madison County in Edwardsville, Illinois. At that time the unpaid balance of assessment was $66,846.

[*11] agreement with a payment of $1,200 a month. On May 27, 2010, petitioner timely sent the RO three Forms 12153, Request for a Collection Due Process or Equivalent Hearing, along with three updated copies of Form 9456. Also on May 27, 2010, respondent entered the computer input code for an installment agreement on petitioner's transcripts. On June 16, 2010, the RO called petitioner to tell him she was recommending that his installment agreement request be denied and suggested that he sell or mortgage an interest in real estate to pay the liabilities. Petitioner explained to her that he had been trying, unsuccessfully, to sell his law office for over a year. On August 5, 2010, the RO called petitioner to tell him that his installment agreement request had been denied.

Petitioner's case was transferred to Settlement Officer (SO) Jane Edwards in the IRS Appeals Office in Omaha, Nebraska (Appeals), in July 2010. Upon first reviewing petitioner's case history in July 2010, SO Edwards noted in the case activity record that on April 13, 2010, the RO requested that the August 18, 2009, input code be reversed because there was no specific monthly payment or due date.[8] The case activity record also states that "[t]his has been confirmed by a review of * * * [petitioner's case file] history which verifies no specific

---

[8]Petitioner's account transcripts have an input code that "reverses pending installment agreement" on May 27, 2010, which presumably relates to the August 18, 2009, input code.

**[\*12]** [installment agreement] request was made at the time the * * * [input code for pending installment agreements] was first input." This entry corresponds to the TAS case information history report stating that petitioner did not submit an installment agreement on or around August 18, 2009. Therefore, the Court presumes the August 18, 2009, input code relates to petitioner's March 5, 2009, letter.

SO Edwards scheduled a telephone conference as part of the CDP hearing for October 5, 2010. Petitioner participated in the telephone conference and raised the issues of collection alternatives and abatement. Petitioner submitted a written request for penalty, addition to tax, and interest abatement after the CDP hearing, which SO Edwards denied.[9] On February 11, 2011, respondent issued the notice of determination sustaining collection action through the NFTL. In the notice of determination respondent denied petitioner's request for an installment agreement because he "has considerable equity in assets that can be loaned against or

---

[9]SO Edwards denied petitioner's request for penalty, addition to tax, and interest abatement because he allegedly did not establish reasonable cause for penalty or addition to tax abatement and did not meet the requirements of sec. 6404 for interest abatement. The case activity record also notes that petitioner could have prevented interest from accruing because respondent's March 5, 2009, letter did not prevent him "from making voluntary payments and had he done so would not have incurred as much in additional penalties and interest that he is now requesting abatement of."

**[\*13]** liquidated to fully pay the liability." SO Edwards' case activity record also states that petitioner did not qualify for an installment agreement in 2009 primarily because of the equity in his assets.[10] The notice of determination also denied petitioner's request for penalty and addition to tax abatement because he did not meet the requirements for "reasonable cause". Petitioner's request for interest abatement was similarly denied because he purportedly did not qualify for abatement under section 6404(a) or (e).

On March 15, 2011, petitioner timely filed a petition in this Court contesting the notice of determination. On or around October 12, 2011, petitioner secured a reverse mortgage and fully paid the employment tax liabilities, including penalties, additions to tax, and interest.[11] On January 6, 2012, respondent filed certificates of release of the Federal tax liens after petitioner's payment. Petitioner continues to pursue this case for abatement of penalties, additions to tax, and interest for March 2009 to October 2011.

---

[10]Specifically, the November 24, 2010, entry in the case activity record states: "The taxpayer stated in his 2009 correspondence that he desired an installment agreement. He, at that time and this, does not qualify for an installment agreement due, primarily, to his equity in assets."

[11]Petitioner had previously applied for a mortgage with three different banks in 2009 and for a reverse mortgage in October 2010 on his personal residence but was denied each time.

**[\*14]**                                   OPINION

Petitioner contends that:  (1) the Court has jurisdiction over his abatement claims under section 6404(h), (2) respondent committed an abuse of discretion by failing to abate penalties and additions to tax pursuant to subsection (f), and (3) respondent committed an abuse of discretion by failing to abate interest under either subsection (a) or (e) because of respondent's delay in processing the installment agreement request in petitioner's March 5, 2009, letter.  Respondent asserts that:  (1) the Court lacks jurisdiction over petitioner's penalty and addition to tax abatement claims; (2) there was no abuse of discretion under section 6404(e) because the Commissioner is not authorized under subsection (e) to abate interest assessed with respect to employment taxes; and (3) there was no abuse of discretion under subsection (a) because the assessments of interest were not excessive in amount, assessed after the expiration of the period of limitations, or erroneously or illegally assessed.

Jurisdiction

The Tax Court is a court of limited jurisdiction and may exercise jurisdiction only when Congress has expressly authorized it to do so.  See sec. 7442; Breman v. Commissioner, 66 T.C. 61, 66 (1976); see also Rule 13(a).  The Court has jurisdiction to determine its jurisdiction over a particular case.  Kluger

**[*15]** v. Commissioner, 83 T.C. 309, 314 (1984).  Moreover, the Court's jurisdiction cannot be enlarged by the parties' agreement or waiver or failure to object.  Romann v. Commissioner, 111 T.C. 273, 281 (1998).

Petitioner disputes a notice of determination that Appeals issued embodying the results of a CDP hearing pursuant to section 6320(b).  Because petitioner satisfied all of his employment tax obligations after the issuance of the notice of determination, the Court does not have jurisdiction over this case by means of section 6320 or 6330.  See Greene-Thapedi v. Commissioner, 126 T.C. 1, 12 (2006) (holding that the Court lacks jurisdiction under section 6330 for a claim for refund when the tax liabilities have been satisfied).

However, because petitioner raised his abatement claim at the CDP hearing, the notice of determination constitutes Appeals' final determination on the matter of abatement.  See Gray v. Commissioner, 138 T.C. 295, 303-305 (2012), supplemented by 140 T.C. 163 (2013).  This determination is independent of Appeals' determination pursuant to section 6320 regardless of the fact that Appeals did not issue a stand-alone notice.  See id.; see also SECC Corp. v. Commissioner, 142 T.C. 225, 231 (2014).  Therefore, the notice and petition may confer jurisdiction pursuant to section 6404(h), the statute that provides the Court's abatement jurisdiction, independent of section 6320 if the requirements of

[*16] section 6404(h) are otherwise satisfied. Gray v. Commissioner, 138 T.C. at 305; see Wright v. Commissioner, 571 F.3d 215, 220 (2d Cir. 2009), vacating and remanding T.C. Memo. 2006-273.

Section 6404(h) provides in relevant part:

The Tax Court shall have jurisdiction over any action brought by a taxpayer who meets the requirements referred to in section 7430(c)(4)(A)(ii) to determine whether the Secretary's failure to abate interest under this section was an abuse of discretion, and may order an abatement, if such action is brought within 180 days after the date of the mailing of the Secretary's final determination not to abate such interest.

Section 6404(h)(2)(B) grants jurisdiction to determine whether there is an overpayment if the Court orders an abatement of interest.[12] See Greene-Thapedi v. Commissioner, 126 T.C. at 10 n.18; Jones v. Commissioner, T.C. Memo. 2008-56, n.3; see also Goettee v. Commissioner, T.C. Memo. 2003-43, supplemented by T.C. Memo. 2004-9, aff'd, 192 Fed. Appx. 212 (4th Cir. 2006).

Respondent concedes and the Court is satisfied that petitioner meets the net worth requirements of section 7430(c)(4)(A)(ii). See Corbalis v. Commissioner,

---

[12]Petitioner does not explicitly claim an overpayment in his petition, but the parties agree that petitioner has paid his employment tax obligations, including interest, penalties, and additions to tax, for the quarters at issue in full. Therefore, the Court will treat the petition as implicitly raising a claim for overpayment. See Jones v. Commissioner, T.C. Memo. 2008-56, slip op. at 2 n.3; see also Bucaro v. Commissioner, T.C. Memo. 2009-247 (citing Hinck v. United States, 550 U.S. 501, 509 (2007)).

[*17] 142 T.C. 46, 58-59 (2014); see also Estate of Kunze v. Commissioner, T.C. Memo. 1999-344, aff'd, 233 F.3d 948 (7th Cir. 2000). Petitioner raised his abatement claim in conjunction with his CDP hearing. Further, petitioner brought this action within 180 days of the mailing of the Secretary's final determination not to abate interest. See Rule 280(b); Gray v. Commissioner, 138 T.C. at 305. Therefore, the Court has jurisdiction to determine whether the Secretary's denial of a request to abate interest under section 6404 was an abuse of discretion.

In his petition, petitioner also claims that he is entitled to penalty and addition to tax abatement pursuant to section 6404(f). The Court lacks jurisdiction to review denials of requests to abate penalties and additions to tax. Krugman v. Commissioner, 112 T.C. 230, 237 (1999); Woodral v. Commissioner, 112 T.C. 19, 21 n.4 (1999); Jones v. Commissioner, T.C. Memo. 2008-56, n.3. The Court will therefore focus on petitioner's claim for interest abatement.

Abuse of Discretion

The Commissioner's power to abate an assessment of interest involves the exercise of discretion, and the Court gives due deference to the Commissioner's discretion. Woodral v. Commissioner, 112 T.C. at 23. In order to prevail, a taxpayer must prove that the Commissioner exercised this discretion arbitrarily,

**[*18]** capriciously, or without sound basis in fact or law.  Id.  Petitioner bears the burden of proof.  See Rule 142(a).

<u>Section 6404(e)</u>

Section 6404(e) authorizes the Secretary to abate the assessment of interest on (1) any deficiency attributable to the IRS' unreasonable error or delay in performing a ministerial or managerial act, or (2) any payment of tax described in section 6212(a) to the extent that unreasonable error or delay in such payment is attributable to the IRS' being erroneous or dilatory in performing a ministerial or managerial act.  It is now well established, however, that the Secretary does not have authority to abate assessed interest pursuant to section 6404(e) with respect to employment taxes.  <u>Woodral v. Commissioner</u>, 112 T.C. at 25; <u>Scanlon White, Inc. v. Commissioner</u>, T.C. Memo. 2005-282, <u>aff'd</u>, 472 F.3d 1173 (10th Cir. 2006); <u>Miller v. Commissioner</u>, T.C. Memo. 2000-196, <u>aff'd</u>, 310 F.3d 640 (9th Cir. 2002); <u>see also</u> sec. 301.6404-2(a), Proced. & Admin. Regs.  Therefore, respondent did not commit an abuse of discretion by denying petitioner's claim for abatement under section 6404(e) because respondent does not have the authority under subsection (e) to abate interest on employment taxes.

**[*19]** <u>Section 6404(a)</u>

Section 6404(a) provides: "The Secretary is authorized to abate the unpaid portion of the assessment of any tax or any liability in respect thereof, which--(1) is excessive in amount, or (2) is assessed after the expiration of the period of limitation properly applicable thereto, or (3) is erroneously or illegally assessed." The term "any liability in respect thereof" includes interest that has accrued on the underlying tax. <u>H & H Trim & Upholstery Co. v. Commissioner</u>, T.C. Memo. 2003-9.

Petitioner does not assert that the interest that accrued on his unpaid employment tax liabilities from March 2009 to October 2011 was assessed after the expiration of the period of limitations. And although petitioner does refer to respondent's denial of his request to abate interest as "erroneous", petitioner has not submitted any evidence to show that the interest was computed on an erroneous legal theory. <u>See</u> <u>In re Burns</u>, 974 F.2d 1064, 1066 (9th Cir. 1992); <u>Woodral v. Commissioner</u>, 112 T.C. at 24. Rather, petitioner's primary assertion is that the interest was "excessive" within the Court's reading of that term in <u>H & H Trim & Upholstery Co.</u>

In <u>H & H Trim & Upholstery Co. v. Commissioner</u>, slip op. at 7, the Court accorded the term its plain meaning and held that "the word 'excessive' takes into

[*20] account the concept of what is fair, or more appropriate here, unfair." Using a "but for" analysis, the Court in that case ordered an abatement of interest where an IRS employee had told the taxpayer the wrong payoff figure for his employment tax liabilities and the taxpayer relied on this figure to pay his liabilities.[13] Id.

In Law Offices of Michael B.L. Hepps v. Commissioner, T.C. Memo. 2005-138, slip op. at 10, the Court reiterated the standard in H & H Trim & Upholstery Co. by stating that it "interpreted the term 'excessive' in section 6404(a), as it relates to interest, to include a concept of unfairness under all of the facts and circumstances." The Court also noted that, in H & H Trim & Upholstery Co., "the taxpayer proved that the interest that was abated under section 6404(a) would not have accrued 'but for' the Commissioner's mistake." Law Offices of Michael B.L. Hepps v. Commissioner, slip op. at 12 n.7. The Court denied in part the Commissioner's motion for summary judgment to provide the parties with the opportunity to develop the facts and consider how the standard in H & H Trim &

---

[13]The Court stated: "Under the circumstances, we are satisfied that, but for respondent's error, petitioner's then-outstanding Federal employment tax liability for the fourth quarter of 1993 would have been completely paid on January 15, 1997. Had petitioner completely paid its employment tax liability on January 15, 1997, no additional interest would have accrued." H & H Trim & Upholstery Co. v. Commissioner, T.C. Memo. 2003-9, slip op. at 9.

**[\*21]** <u>Upholstery Co.</u> affected the legal analysis in the case. <u>Law Offices of Michael B.L. Hepps v. Commissioner</u>, T.C. Memo. 2005-138.

Respondent's primary position is that <u>H & H Trim & Upholstery Co.</u> was incorrectly decided. Respondent maintains the position advanced in <u>H & H Trim & Upholstery Co.</u>, that the term "excessive" is properly limited to amounts that are erroneously or illegally assessed. Respondent has not produced convincing evidence that the Court should abandon the unambiguous, plain meaning of "excessive"[14] in favor of a limited definition supported only by sparse, tangential legislative history and a less-than-illuminating regulation. <u>See</u> sec. 301.6404-1(a), Proced. & Admin. Regs. ("The district director or the director of the regional service center may abate any assessment, or unpaid portion thereof, if the assessment is in excess of the correct tax liability[.]"); <u>see also</u> <u>Pollock v. Commissioner</u>, 132 T.C. 21, 30 (2009) ("We look past plain meaning to determine congressional intent only if the language is ambiguous, applying the plain meaning would lead to an absurd result, or (maybe) where there is clear evidence

_____

[14]"Webster's Third New International Dictionary (1993) defines 'excessive' as 'whatever notably exceeds the reasonable, usual, proper, necessary, just, or endurable'. It further defines 'just' to mean 'equitable', and 'equitable' to mean 'fair'. As we view the matter, when used in the context of interest, the plain meaning of the word 'excessive' takes into account the concept of what is fair, or more appropriate here, unfair." <u>H & H Trim & Upholstery Co. v. Commissioner</u>, slip op. at 7.

[*22] of contrary legislative intent."). Accordingly, the Court analyzes respondent's handling of petitioner's abatement claim for unfairness under all the facts and circumstances.

Whether the Assessed Interest Was Excessive

Petitioner contends that the assessed interest that accrued on his unpaid employment tax liabilities from March 2009 to October 2011 was excessive. Respondent asserts that the assessment of interest was not unfair because: (1) petitioner did not submit a Form 9456 until April 2010; (2) even if petitioner had followed the proper procedures for requesting an installment agreement in March 2009, his request would have been denied because of his equity in assets; (3) it was not reasonable for petitioner to think he had an installment agreement in March 2009; and (4) even without an installment agreement, petitioner could have made voluntary payments but did not.

The Court addresses petitioner's claim in chronological order by relevant dates in the record.

Abatement of Interest for March 5 to June 10, 2009

On March 5, 2009, petitioner sent his examining agent Mr. Proffitt a letter requesting an installment agreement. That same day, respondent's tax technician Mr. Oliver told petitioner that "[w]e have considered the information that you have

[*23] submitted and will be happy to honor your request for an installment payment plan." Petitioner sent respondent the requested Forms 2504 within the 10-day timeframe along with the March 12, 2009, letter restating his request for an installment agreement. Petitioner did not receive any additional information or direction in regard to an installment payment plan referenced in Mr. Oliver's letter. Instead of corresponding with petitioner about a potential installment agreement, respondent sent petitioner approximately 17 Notices CP 504 entitled "Urgent!! We intend to levy on certain assets. Please respond NOW." Thereafter, petitioner called respondent's Cincinnati office and was directed to TAS. On June 10, 2009, petitioner spoke with TA Morrell and received information about collection alternatives.

The Commissioner has the authority to prescribe the procedures, form, and manner of proposing installment agreements. Sec. 301.6159-1(b)(1), Proposed Proced. & Admin. Regs., 72 Fed. Reg. 9714 (Mar. 5, 2007) (finalized Nov. 25, 2009).[15] Internal Revenue Manual (IRM) pt. 5.14.1.3 (Sept. 26, 2008) outlines the

---

[15]Although proposed Treasury regulations are not authority, the Court cites this regulation in its proposed form because petitioner's interaction with Mr. Oliver took place in March 2009 and the regulation was not finalized until November 2009. Therefore, the proposed regulation was the guidance available to Mr. Oliver at that time. The proposed regulation does not differ in content from the final regulation.

**[\*24]** ways in which a taxpayer may request an installment agreement.[16]

According to the IRM, "[p]roposals to enter into installment agreements may result from letters, phone contacts, voice-mail, e-mail, or other communications between taxpayers and Service personnel." Id. pt. 5.14.1.3(1).

The installment agreement request must satisfy four conditions before an IRS employee may identify a taxpayer's account as having a pending installment agreement. Id. pt. 5.14.1.3(4). In the installment agreement request, the taxpayer must: (1) provide sufficient information to identify the taxpayer, (2) identify the tax liability that the request addresses, (3) propose a periodic payment of a specific

---

[16]This Court has held that procedures set forth in the IRM "do not have the force or effect of law" and a failure to adhere to IRM procedures does not rise to the level of a constitutional violation, see, e.g., Vallone v. Commissioner, 88 T.C. 794, 807-808 (1987) (obtaining checks in violation of IRM not a constitutional violation requiring suppression); Riland v. Commissioner, 79 T.C. 185 (1982) (failure to abide by IRM procedures not a violation of due process), and that the IRM does not create enforceable rights for taxpayers, see Fargo v. Commissioner, 447 F.3d 706, 713 (9th Cir. 2006), aff'g T.C. Memo. 2004-13.

However, the regulations state that the Commissioner has the authority to prescribe the procedures, form, and manner of proposing installment agreements. See sec. 301.6159-1(b)(1), Proposed Proced. & Admin. Regs., 72 Fed. Reg. 9714 (Mar. 5, 2007) (finalized Nov. 25, 2009). Therefore, the IRM can be persuasive authority, see Atchison v. Commissioner, T.C. Memo. 2009-8, and a review of relevant IRM provisions is instructive in ascertaining the procedures the IRS expects its employees to follow in processing installment agreements, see, e.g., Wadleigh v. Commissioner, 134 T.C. 280, 294-295 (2010) (reviewing relevant IRM provisions to determine procedures that IRS employees are expected to follow when deciding whether to levy on a taxpayer's retirement account).

**[*25]** amount, and (4) be in compliance with filing requirements.[17]  Id.  If the

taxpayer does not satisfy these four requirements, the IRS employee is instructed

to ask the taxpayer for the missing information.  Id. pt. 5.14.1.3(6).  The IRM

provides an example:  If no payment amount is specified, the employee should ask

how much can be paid per month.  Id.  Once the IRS receives a perfected

installment agreement request, it must enter a computer input code within 24 hours

of the request for, and identification of, pending agreements to prevent levy

actions.  Id. pt. 5.14.1.3(3).

Petitioner's March 5, 2009, letter identified him and the employment tax

liabilities.  It did not propose a specific amount per month but rather equal

monthly payments over 60 months.  The record is not clear whether petitioner was

in filing compliance at that time.[18]  Because neither petitioner's March 5, 2009,

letter nor the March 12, 2009, letter provided information sufficient to satisfy the

four requirements of IRM pt. 5.14.1.3(4), petitioner did not submit a perfected

---

[17]Taxpayers need not be in compliance with estimated payment or Federal tax deposit requirements for an installment agreement request to be identified as a pending installment agreement.  IRM pt. 5.14.1.3(5).

[18]The TAS case information history report states, in an entry dated August 5, 2009, that petitioner needed to file Forms 941 but does not specify for which quarter(s) petitioner was not in compliance.  The CDP administrative record reflects that at the time of the CDP hearing request petitioner was in compliance with Form 941 filing requirements.

[*26] installment agreement. Respondent was therefore not required to enter an input code within 24 hours of receipt of either letter.

At that point an IRS employee should have asked petitioner how much he could afford to pay each month and whether he was in filing compliance. See id. pt. 5.14.1.3(6). Instead of communicating this to petitioner, however, respondent next corresponded with petitioner over two months later with approximately 17 Notices CP 504 threatening collection action by levy.

Petitioner followed the instructions in respondent's March 5, 2009, letter by mailing the Forms 2504 within 10 days. He did not receive any indication from respondent that his installment agreement request was deficient. Respondent did not adhere to the instructions in IRM pt. 5.14.1.3(6) by asking for the information missing from petitioner's proposal. It was reasonable for petitioner to believe, absent communication from respondent, that his installment agreement would be processed once respondent received the Forms 2504. Respondent assessed the tax shown on the Forms 2504 on April 13, 2009. Therefore, respondent had received and processed the Forms 2504 by that date but did not communicate to petitioner about his proposed installment agreement at that time.

The delay from respondent's failure to communicate to petitioner the deficiencies of his proposed installment agreement was unfair to petitioner under

[*27] all the facts and circumstances.  Cf. Estate of Sanfilippo v. Commissioner, T.C. Memo. 2015-15 (remanding a CDP appeal to the IRS Appeals Office in part because the Appeals officer determined to proceed with collection when the taxpayer proposed an offer-in-compromise (but did not submit a Form 656, Offer in Compromise) and the officer did not communicate that the taxpayer's method of proposing the offer was inadequate).  The fact that petitioner may not have qualified for an installment agreement at that time is not dispositive, as respondent failed to take even preliminary steps toward determining petitioner's eligibility.  It was not until June 10, 2009, when petitioner spoke with TAS, that he was informed of the additional steps necessary to arrange an installment agreement, putting him back in the place he would have been in had respondent's Cincinnati office timely communicated with him.  The Court is satisfied that, had respondent timely communicated with petitioner about the proposal, petitioner would have perfected his proposal within a reasonable time.  The Court is further satisfied that, but for respondent's delay in communicating with petitioner, petitioner would have paid his employment tax liabilities earlier.

Respondent contends that petitioner is not entitled to abatement because he could have made voluntary payments but did not.  However, unlike section 6404(e), subsection (a) does not bar abatement when a significant aspect of the

[*28] error or delay can be attributed to the taxpayer involved. See sec. 6404(e); Hill v. Commissioner, T.C. Memo. 2010-200, slip op. at 18 (holding that the taxpayers were not entitled to interest abatement under section 6404(e) when "[t]hey self-reported their income tax liability and chose to forgo making payments to pursue alternative avenues of relief"), aff'd, 436 Fed. Appx. 410 (5th Cir. 2011).

Therefore, the interest that accrued from April 13, 2009,[19] until June 10, 2009, was excessive, and respondent's denial of petitioner's request to abate this interest was an abuse of discretion. See H & H Trim & Upholstery Co. v. Commissioner, T.C. Memo. 2003-9.

Abatement of Interest for June 11, 2009, to March 14, 2010

After June 10, 2009, petitioner knew or should have known the requirements for submitting an installment agreement, such as providing financial information. On August 5, 2009, after receiving the requested financial information, TA Morrell told petitioner that TAS did not have authority to accept collection alternatives because the debt was business debt and because of the large amount due. She told petitioner that his case would be assigned to an RO once he

---

[19]Respondent assessed the tax shown on the Forms 2504 on April 13, 2009. Therefore, respondent had received and processed the Forms 2504 by that date.

[*29] sent additional financial information. Respondent received this information and forwarded petitioner's case to a qualified RO.

Although respondent may have shuffled petitioner to TAS to resolve his own mistakes, TAS is an independent body, see sec. 7803(c), and was not under obligation to assist petitioner with his case, see IRM pt. 13.1.7.1 (July 23, 2007) (stating that TAS may identify its own criteria that qualify taxpayers for TAS assistance). Further, TAS is not a substitute for regular IRS procedures. Petitioner has not shown that, but for a particular action that TAS took, his employment tax obligations would have been paid sooner. Rather, TAS facilitated petitioner's working toward a collection alternative by providing information about collection alternatives and forwarding his case to a qualified RO. Accordingly, the interest that accrued while TAS worked on petitioner's case was not excessive and respondent did not abuse his discretion in failing to abate it.

Abatement of Interest for March 15, 2010, to October 12, 2011

The IRS Service Center did not have a qualified RO available until March 15, 2010. The RO first met with petitioner by April 6, 2010. The record reveals that the delay in assigning petitioner's case to an RO was due to the lack of qualified ROs in the area. In fact, the only qualified RO in the area had a full inventory and could not accept more cases. This delay was not unreasonable

[*30] under the circumstances.  See Chakoian v. Commissioner, T.C. Memo. 2009-151 (holding that the delay in processing the taxpayer's offer-in-compromise because of a backlog of offers-in-compromise was not unreasonable). Accordingly, petitioner has not shown that the interest that accrued during this time was excessive or that respondent abused his discretion by failing to abate it.

The RO recommended that petitioner file Form 9456, which petitioner did on April 30, 2010.[20]  On June 16, 2010, the RO called petitioner to tell him that she was recommending his installment agreement request be denied and suggested that he sell or mortgage an interest in real estate to pay the liabilities.  On August 5, 2010, the RO called petitioner to tell him that his installment agreement request had been denied.  The record does not show that the RO did not follow IRS procedures or otherwise caused unnecessary and unfair delay while processing the Form 9456.

Petitioner's case was transferred to Appeals and to SO Edwards in July 2010.  The SO conducted the CDP hearing, including a telephone conference, in October 2010, and subsequently issued a notice of determination on February 11,

---

[20]Respondent did not enter a computer input code for a pending installment agreement until May 27, 2010.  The record does not show any explanation for the delay.  However, this delay did not cause petitioner unfairness under the circumstances, as the RO continued to work on his case during that time.

[*31] 2011. SO Edwards' actions did not deviate from IRS procedures or cause petitioner unfair delay.

Upon the issuance of the notice of determination, there were no additional administrative steps for respondent to take. See sec. 301.6320-1(f)(1), Proced. & Admin. Regs. (stating that a taxpayer may seek judicial review after receiving a notice of determination). Therefore, respondent could not have caused petitioner unnecessary delay after the notice of determination was issued. Interest stopped accruing once petitioner paid his employment tax obligations for the quarters at issue on or around October 12, 2011. On January 6, 2012, respondent filed releases from the Federal tax liens. Accordingly, respondent did not abuse his discretion by failing to abate interest during this period.

Conclusion

Petitioner has shown that the interest that accrued between April 13, 2009, and June 10, 2009, was excessive as defined in H & H Trim & Upholstery Co. v. Commissioner, T.C. Memo. 2003-9. Respondent therefore abused his discretion by failing to abate interest for this period.

In reaching our holding herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude that they are moot, irrelevant, or without merit.

**[\*32]** To reflect the foregoing,

<u>An appropriate decision</u>

<u>will be entered</u>.